# HARTFORD UNDERWRITERS INSURANCE CO. *v.*
## UNION PLANTERS BANK, N. A.

No. 99–409.   Argued March 20, 2000—Decided May 30, 2000

SCALIA, J., delivered the opinion for a unanimous Court.

*G. Eric Brunstad, Jr.,* argued the cause for petitioner. With him on the briefs were *Patrick J. Trostle* and *Wendi Alper-Pressman.*

*Robert H. Brownlee* argued the cause for respondent. With him on the brief was *David D. Farrell.*\*

JUSTICE SCALIA delivered the opinion of the Court.

In this case, we consider whether 11 U. S. C. § 506(c) allows an administrative claimant of a bankruptcy estate to seek payment of its claim from property encumbered by a secured creditor's lien.

## I

This case arises out of the bankruptcy proceedings of Hen House Interstate, Inc., which at one time owned or operated several restaurants and service stations, as well as an outdoor-advertising firm. On September 5, 1991, Hen House filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri. As a Chapter 11 debtor-in-possession, Hen House retained possession of its assets and continued operating its business.

Respondent had been Hen House's primary lender.[1] At the time the Chapter 11 petition was filed, it held a security interest in essentially all of Hen House's real and personal property, securing an indebtedness of over $4 million. After the Chapter 11 proceedings were commenced, it agreed to lend Hen House an additional $300,000 to help finance the reorganization. The Bankruptcy Court entered a financing order approving the loan agreement and author-

---

\**Mark F. Horning, Sidney P. Levinson, Craig A. Berrington,* and *Phillip L. Schwartz* filed a brief for the American Insurance Association et al. as *amici curiae* urging reversal.

*Carter G. Phillips* and *Shalom L. Kohn* filed a brief for the Commercial Finance Association as *amicus curiae* urging affirmance.

[1] Respondent Union Planters Bank is the successor of Magna Bank, which is in turn the successor of Landmark Bank of Illinois. Hen House was originally indebted to Landmark Bank. For simplicity, we will not distinguish between the various entities.

izing Hen House to use loan proceeds and cash collateral to pay expenses, including workers' compensation expenses.

During the attempted reorganization, Hen House obtained workers' compensation insurance from petitioner Hartford Underwriters (which was unaware of the bankruptcy proceedings). Although the policy required monthly premium payments, Hen House repeatedly failed to make them; Hartford continued to provide insurance nonetheless. The reorganization ultimately failed, and on January 20, 1993, the Bankruptcy Court converted the case to a liquidation proceeding under Chapter 7 and appointed a trustee. At the time of the conversion, Hen House owed Hartford more than $50,000 in unpaid premiums. Hartford learned of Hen House's bankruptcy proceedings after the conversion, in March 1993.

Recognizing that the estate lacked unencumbered funds to pay the premiums, Hartford attempted to charge the premiums to respondent, the secured creditor, by filing with the Bankruptcy Court an "Application for Allowance of Administrative Expense, Pursuant to 11 U.S.C. §503 and Charge Against Collateral, Pursuant to 11 U.S.C. §506(c)." The Bankruptcy Court ruled in favor of Hartford, and the District Court and an Eighth Circuit panel affirmed, *In re Hen House Interstate, Inc.*, 150 F. 3d 868 (CA8 1998). The Eighth Circuit subsequently granted en banc review, however, and reversed, concluding that §506(c) could not be invoked by an administrative claimant. *In re Hen House Interstate, Inc.*, 177 F. 3d 719 (1999). We granted certiorari. 528 U.S. 985 (2000).

II

Petitioner's effort to recover the unpaid premiums involves two provisions, 11 U.S.C. §§503(b) and 506(c). Section 503(b) provides that "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commence-

ment of the case," are treated as administrative expenses, which are, as a rule, entitled to priority over prepetition unsecured claims, see §§ 507(a)(1), 726(a)(1), 1129(a)(9)(A). Respondent does not dispute that the cost of the workers' compensation insurance Hen House purchased from petitioner is an administrative expense within the meaning of this provision. Administrative expenses, however, do not have priority over secured claims, see §§ 506, 725–726, 1129(b)(2)(A); *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 378–379 (1988), and because respondent held a security interest in essentially all of the estate's assets, there were no unencumbered funds available to pay even administrative claimants.

Petitioner therefore looked to § 506(c), which constitutes an important exception to the rule that secured claims are superior to administrative claims. That section provides as follows:

> "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." § 506(c).

Petitioner argued that this provision entitled it to recover from the property subject to respondent's security interest the unpaid premiums owed by Hen House, since its furnishing of workers' compensation insurance benefited respondent by allowing continued operation of Hen House's business, thereby preserving the value of respondent's collateral; or alternatively, that such benefit could be presumed from respondent's consent to the postpetition financing order. Although it was contested below whether, under either theory, the workers' compensation insurance constituted a "benefit to the holder" within the meaning of § 506(c), that issue is not before us here; we assume for purposes of this decision that it did, and consider only whether peti-

tioner—an administrative claimant—is a proper party to seek recovery under § 506(c).[2]

In answering this question, we begin with the understanding that Congress "says in a statute what it means and means in a statute what it says there," *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 254 (1992). As we have previously noted in construing another provision of § 506, when "the statute's language is plain, 'the sole function of the courts' "—at least where the disposition required by the text is not absurd—" 'is to enforce it according to its terms.' " *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989) (quoting *Caminetti* v. *United States*, 242 U. S. 470, 485 (1917)). Here, the statute appears quite plain in specifying who may use § 506(c)—"[t]he trustee." It is true, however, as petitioner notes, that all this actually "says" is that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision.[3] We have little difficulty answering yes.

Several contextual features here support the conclusion that exclusivity is intended. First, a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity. "Where a

---

[2] In addition to seeking recovery under § 506(c), petitioner argued to the Eighth Circuit en banc that it was entitled to recover under the terms of the postpetition financing order itself. Petitioner sought to enforce that order under Federal Rule of Bankruptcy Procedure 7071, which incorporates Federal Rule of Civil Procedure 71 ("When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party . . ."). The Eighth Circuit declined to address this issue, since it had not been raised until the rehearing en banc, *In re Hen House Interstate, Inc.*, 177 F. 3d 719, 724 (1999). We similarly do not reach the issue here.

[3] Debtors-in-possession may also use the section, as they are expressly given the rights and powers of a trustee by 11 U. S. C. § 1107.

statute . . . names the parties granted [the] right to invoke its provisions, . . . such parties only may act." 2A N. Singer, Sutherland on Statutory Construction §47.23, p. 217 (5th ed. 1992) (internal quotation marks omitted); see also *Federal Election Comm'n* v. *National Conservative Political Action Comm.*, 470 U. S. 480, 486 (1985). Second, the fact that the sole party named—the trustee—has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others. Indeed, had no particular parties been specified—had §506(c) read simply "[t]here may be recovered from property securing an allowed secured claim the reasonable, necessary costs and expenses, etc."—the trustee is the most obvious party who would have been thought empowered to use the provision. It is thus far more sensible to view the provision as answering the question "Who may use the provision?" with "only the trustee" than to view it as simply answering the question "May the trustee use the provision?" with "yes."

Nor can it be argued that the point of the provision was simply to establish that certain costs may be recovered from collateral, and not to say anything about who may recover them. Had that been Congress's intention, it could easily have used the formulation just suggested. Similarly, had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the parties who could act under other sections of the Code. Section 502(a), for example, provides that a claim is allowed unless "a party in interest" objects, and §503(b)(4) allows "an entity" to file a request for payment of an administrative expense. The broad phrasing of these sections, when contrasted with the use of "the trustee" in §506(c), supports the conclusion that entities other than the trustee are not entitled to use §506(c). *Russello* v. *United States*, 464 U. S. 16, 23 (1983).

Petitioner's primary argument from the text of §506(c) is that "what matters is that section 506(c) does not say that

'only' a trustee may enforce its provisions." Brief for Petitioner 29. To bolster this argument, petitioner cites other provisions of the Bankruptcy Code that do use "only" or other expressly restrictive language in specifying the parties at issue. See, e. g., § 109(a) ("[O]nly a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title"); § 707(b) (providing that a case may be dismissed for substantial abuse by "the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest"). Petitioner argues that in the absence of such restrictive language, no party in interest is excluded. This theory—that the expression of one thing indicates the inclusion of others unless exclusion is made explicit—is contrary to common sense and common usage. Many provisions of the Bankruptcy Code that do not contain an express exclusion cannot sensibly be read to extend to all parties in interest. See, e. g., § 363(b)(1) (providing that "[t]he trustee, after notice and a hearing, may use, sell, or lease . . . property of the estate"); § 364(a) (providing that "the trustee" may incur debt on behalf of the bankruptcy estate); § 554(a) (giving "the trustee" power to abandon property of the bankruptcy estate).

Petitioner further argues that § 1109 evidences the right of a nontrustee to recover under § 506(c). We are not persuaded. That section, which provides that a "party in interest" "may raise and may appear and be heard on any issue in a case under [Chapter 11]," is by its terms inapplicable here, since petitioner's attempt to use § 506(c) came after the bankruptcy proceeding was converted from Chapter 11 to Chapter 7. In any event, we do not read § 1109(b)'s general provision of a right to be heard as broadly allowing a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties. Cf. 7 L. King, Collier on Bankruptcy ¶ 1109.05 (rev. 15th ed. 1999) ("In general, section 1109 does not bestow any right to usurp the

trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate").

## III

Because we believe that by far the most natural reading of § 506(c) is that it extends only to the trustee, petitioner's burden of persuading us that the section must be read to allow its use by other parties is "'exceptionally heavy.'" *Patterson* v. *Shumate*, 504 U. S. 753, 760 (1992) (quoting *Union Bank* v. *Wolas*, 502 U. S. 151, 156 (1991)). To support its proffered reading, petitioner advances arguments based on pre-Code practice and policy considerations. We address these arguments in turn.

## A

Section 506(c)'s provision for the charge of certain administrative expenses against lienholders continues a practice that existed under the Bankruptcy Act of 1898, see, *e. g.*, *In re Tyne*, 257 F. 2d 310, 312 (CA7 1958); 4 Collier on Bankruptcy, *supra*, ¶ 506.05[1]. It was not to be found in the text of the Act, but traced its origin to early cases establishing an equitable principle that where a court has custody of property, costs of administering and preserving the property are a dominant charge, see, *e. g.*, *Bronson* v. *La Crosse & Milwaukee R. Co.*, 1 Wall. 405, 410 (1864); *Atlantic Trust Co.* v. *Chapman*, 208 U. S. 360, 376 (1908). It was the norm that recovery of costs from a secured creditor would be sought by the trustee, see, *e. g.*, *Textile Banking Co.* v. *Widener*, 265 F. 2d 446, 453–454 (CA4 1959); *Tyne, supra*, at 312. Petitioner cites a number of lower court cases, however, in which—without meaningful discussion of the point— parties other than the trustee were permitted to pursue such charges under the Act, sometimes simultaneously with the trustee's pursuit of his own expenses, see, *e. g.*, *First Western Savings and Loan Assn.* v. *Anderson*, 252 F. 2d 544, 547–548 (CA9 1958); *In re Louisville Storage Co.*, 21 F. Supp. 897, 898

(WD Ky. 1936), aff'd, 93 F. 2d 1008 (CA6 1938), but sometimes independently, see *In re Chapman Coal Co.*, 196 F. 2d 779, 780 (CA7 1952); *In re Rotary Tire & Rubber Co.*, 2 F. 2d 364 (CA6 1924). Petitioner also relies on early decisions of this Court allowing individual claimants to seek recovery from secured assets, see *Louisville, E. & St. L. R. Co.* v. *Wilson*, 138 U. S. 501, 506 (1891); *Burnham* v. *Bowen*, 111 U. S. 776, 779, 783 (1884); *New York Dock Co.* v. *S. S. Poznan*, 274 U. S. 117, 121 (1927). *Wilson* and *Burnham* involved equity receiverships, and were not only pre-Code, but predate the Bankruptcy Act of 1898 that the Code replaced; while *New York Dock* was a case arising in admiralty.

It is questionable whether these precedents establish a bankruptcy practice sufficiently widespread and well recognized to justify the conclusion of implicit adoption by the Code. We have no confidence that the allowance of recovery from collateral by nontrustees is "the type of 'rule' that . . . Congress was aware of when enacting the Code." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S., at 246. Cf. *Dewsnup* v. *Timm*, 502 U. S. 410, 418 (1992) (relying on "clearly established" pre-Code practice); *Kelly* v. *Robinson*, 479 U. S. 36, 46 (1986) (giving weight to pre-Code practice that was "widely accepted" and "established"). In any event, while pre-Code practice "informs our understanding of the language of the Code," *id.*, at 44, it cannot overcome that language. It is a tool of construction, not an extratextual supplement. We have applied it to the construction of provisions which were "subject to interpretation," *id.*, at 50, or contained "ambiguity in the text," *Dewsnup, supra,* at 417. "[W]here the meaning of the Bankruptcy Code's text is itself clear . . . its operation is unimpeded by contrary . . . prior practice," *BFP* v. *Resolution Trust Corporation*, 511 U. S. 531, 546 (1994) (internal quotation marks omitted). See, *e. g., Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 563 (1990); *United States* v. *Ron Pair Enterprises, Inc., supra,* at 245–246.

In this case, we think the language of the Code leaves no room for clarification by pre-Code practice. If § 506(c) provided only that certain costs and expenses could be recovered from property securing a secured claim, without specifying any particular party by whom the recovery could be pursued, the case would be akin to those in which we used prior practice to fill in the details of a pre-Code concept that the Code had adopted without elaboration. See, *e. g.,* *United States* v. *Noland,* 517 U. S. 535, 539 (1996) (looking to pre-Code practice in interpreting Code's reference to "principles of equitable subordination"); *Midlantic Nat. Bank* v. *New Jersey Dept. of Environmental Protection,* 474 U. S. 494, 501 (1986) (codification of trustee's abandonment power held to incorporate established exceptions). Here, however, it is not the unelaborated concept but only a specifically narrowed one that has been adopted: a rule allowing the charge of costs to secured assets *by the trustee.* Pre-Code practice cannot transform § 506(c)'s reference to "the trustee" to "the trustee and other parties in interest."

### B

Finally, petitioner argues that its reading is necessary as a matter of policy, since in some cases the trustee may lack an incentive to pursue payment. Section 506(c) must be open to nontrustees, petitioner asserts, lest secured creditors enjoy the benefit of services without paying for them. Moreover, ensuring that administrative claimants are compensated may also serve purposes beyond the avoidance of unjust enrichment. To the extent that there are circumstances in which the trustee will not use the section although an individual creditor would,[4] allowing suits by nontrustees

---

[4] The frequency with which such circumstances arise may depend in part on who ultimately receives the recovery obtained by a trustee under § 506(c). Petitioner argues that it goes to the party who provided the services that benefited collateral (assuming that party has not already been compensated by the estate). Respondent argues that this read-

could encourage the provision of postpetition services to debtors on more favorable terms, which would in turn further bankruptcy's goals.

Although these concerns may be valid, it is far from clear that the policy implications favor petitioner's position. The class of cases in which § 506(c) would lie dormant without nontrustee use is limited by the fact that the trustee is obliged to seek recovery under the section whenever his fiduciary duties so require. And limiting § 506(c) to the trustee does not leave those who provide goods or services that benefit secured interests without other means of protecting themselves as against other creditors: They may insist on cash payment, or contract directly with the secured creditor, and may be able to obtain superpriority under § 364(c)(1) or a security interest under §§ 364(c)(2), (3), or § 364(d). And of course postpetition creditors can avoid unnecessary losses simply by paying attention to the status of their accounts, a protection which, by all appearances, petitioner neglected here.

On the other side of the ledger, petitioner's reading would itself lead to results that seem undesirable as a matter of policy. In particular, expanding the number of parties who could use § 506(c) would create the possibility of multiple administrative claimants seeking recovery under the sec-

---

ing, like a reading that allows creditors themselves to use § 506(c), upsets the Code's priority scheme by giving administrative claimants who benefit collateral an effective priority over others—allowing, for example, a Chapter 11 administrative creditor (like petitioner) to obtain payment via § 506(c) while Chapter 7 administrative creditors remain unpaid, despite § 726(b)'s provision that Chapter 7 administrative claims have priority over Chapter 11 administrative claims. Thus, respondent asserts that a trustee's recovery under § 506(c) simply goes into the estate to be distributed according to the Code's priority provisions. Since this case does not involve a trustee's recovery under § 506(c), we do not address this question, or the related question whether the trustee may use the provision prior to paying the expenses for which reimbursement is sought, see *In re K & L Lakeland, Inc.*, 128 F. 3d 203, 207, 212 (CA4 1997).

tion. Each such claim would require inquiry into the necessity of the services at issue and the degree of benefit to the secured creditor. Allowing recovery to be sought at the behest of parties other than the trustee could therefore impair the ability of the bankruptcy court to coordinate proceedings, as well as the ability of the trustee to manage the estate. Indeed, if administrative claimants were free to seek recovery on their own, they could proceed even where the trustee himself planned to do so. See, *e. g., In re Bluffton Castings Corp.,* 224 B. R. 902, 904 (Bkrtcy. Ct. ND Ind. 1998).[5] Further, where unencumbered assets were scarce, creditors might attempt to use § 506(c) even though their claim to have benefited the secured creditor was quite weak. The possibility of being targeted for such claims by various administrative claimants could make secured creditors less willing to provide postpetition financing.

In any event, we do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not

---

[5] We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). *Amici* American Insurance Association and National Union Fire Insurance Co. draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U. S. C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee. See, *e. g., In re Gibson Group, Inc.,* 66 F. 3d 1436, 1438 (CA6 1995). Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead. Petitioner asserted an independent right to use § 506(c), which is what we reject today. Cf. *In re Xonics Photochemical, Inc.,* 841 F. 2d 198, 202–203 (CA7 1988) (holding that creditor had no right to bring avoidance action independently, but noting that it might have been able to seek to bring derivative suit).

the courts. *Kawaauhau* v. *Geiger*, 523 U. S. 57, 64 (1998); *Noland*, 517 U. S., at 541–542, n. 3; *Wolas*, 502 U. S., at 162.

\*       \*       \*

We have considered the other points urged by petitioner and find them to be without merit. We conclude that 11 U. S. C. § 506(c) does not provide an administrative claimant an independent right to use the section to seek payment of its claim. The judgment of the Eighth Circuit is affirmed.

*It is so ordered.*