In re NEWCORN ENTERPRISES LTD., Debtor.

Official Unsecured Creditors' Committee.

No. 01–44206–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Feb. 27, 2002.

Steven Goldstein, Goldstein and Vouga, St. Louis, MO, for Debtor.

Wendi Apler–Pressman, Gallop, Johnson & Neuman, L.C., St. Louis, MO, for Official Unsecured Creditors' Committee.

### MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

Debtor Newcorn Enterprises Ltd. sold substantially all of its assets after filing for relief under Chapter 11. The only secured creditor is Commercial Bank. The Official Unsecured Creditors' Committee requested Debtor to file an adversary proceeding to marshal Debtor's assets including the sales proceeds. The Committee seeks to compel Commercial Bank to satisfy its claim against the estate, in part, from collateral pledged by Debtor's shareholders rather than solely from the sale proceeds. Debtor has declined to file the adversary proceeding. The Committee has moved for an order granting it derivative standing to file a marshalling adversary complaint. The Court will grant the Committee's motion because Debtor has unjustifiably refused to file a complaint.

### Jurisdiction and Venue

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

### Procedural Background

On April 12, 2001, Debtor Newcorn Enterprises Ltd. filed a voluntary petition seeking relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. On May 9, 2001, the United States Trustee appointed the Official Unsecured Creditors' Committee (the "Committee") in accordance with 11 U.S.C. § 1102.

On October 18, 2001, the Court entered an order approving the sale of substantially all of Debtor's assets to XYZ, LLC. On December 31, 2001, the Committee filed the present motion seeking derivative standing to commence an adversary proceeding. A hearing of the motion was held on January 23, 2002, and the matter was taken under submission.

### Findings of Fact

The following facts are undisputed and have been established by the arguments

made at the hearing and from the documents filed in this matter:

1) Debtor Newcorn Enterprises Ltd. filed for relief under Chapter 11 of the United States Bankruptcy Code on April 12, 2001.

2) On May 9, 2001, the United States Trustee appointed the Official Unsecured Creditors' Committee (the "Committee") in accordance with 11 U.S.C. § 1102.

3) On October 18, 2001, the Court entered an order approving the sale of substantially all of Debtor's assets to XYZ, LLC.

4) Creditor Commerce Bank is the sole secured creditor of Debtor's estate.

5) John and Sandra Hayes are the principal shareholders of Newcorn Enterprises Ltd.

6) On December 31, 2001, the Committee filed the present motion seeking derivative standing to commence an adversary proceeding. In its motion the Committee stated that:

 i. Commerce Bank has a lien on all of the proceeds from the sale of Debtor's assets. In addition, Commerce Bank holds a Deed of Trust on real estate owned by John and Sandra Hayes.

 ii. The Committee sent a written demand to Debtor's counsel to commence an adversary proceeding under 11 U.S.C. § 544(a) to marshal Debtor's assets. The Committee sought to marshal the assets in an effort to have Commerce Bank's claim satisfied, in part, by the collateral pledged by the Hayes rather than solely by the proceeds of the sale of Debtor's assets.

 iii. Debtor has refused to file an adversary proceeding to marshal Debtor's assets.

 iv. The Committee seeks an order from the Court granting the Committee standing to bring a marshalling adversary proceeding under 11 U.S.C. § 544(a) in the place of the trustee/debtor-in-possession. The Committee asserts that its standing to bring the adversary proceeding is derived from the broad grant of power to the Committee under 11 U.S.C. § 1109(b).

6) Creditor Commercial Bank objects to the Committee's motion. Commercial Bank asserts that the Supreme Court's holding in *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) precludes the Court from granting derivative standing to the Committee.

### Discussion

Debtor was a fast food operation with outlets at shopping malls in the St. Louis metropolitan area. After filing for bankruptcy Debtor sold substantially all of its assets to XYZ, LLC. The sole secured creditor, Commercial Bank, has a lien against the proceeds of the sale.

As additional security for its loans to Debtor, Commercial Bank had the Debtor's principal shareholders, John and Sandra Hayes, grant the bank a deed of trust on real estate owned by the Hayes. In an effort to increase the pool of Debtor's funds to satisfy the claims on the estate, the Official Unsecured Creditors' Committee requested Debtor to file an adversary complaint seeking to marshal Debtor's assets. The Committee believes that by marshaling Debtor's assets, Commercial Bank's secured interest in the Hayes' real estate will be included in the Debtor's assets. The Committee is attempting to make the Debtor's asset pie larger in hopes of increasing the pay-out to unsecured creditors after the lien of Commercial Bank is satisfied.

The power to request a marshalling of assets is derived from a trustee's judicial

lien created under 11 U.S.C. § 544(a).[1] A debtor-in-possession in a Chapter 11 bankruptcy is granted almost all of the powers of a trustee through the application of 11 U.S.C. § 1107, including the trustee's powers under § 544(a). A marshalling of assets in Newcorn's case theoretically may place the deed of trust on the Hayes' real property in the pool of assets available to settle claims against the estate. John Hayes, as the principal of Debtor Newcorn, is making the bankruptcy proceeding decisions on behalf of the Debtor. Not surprisingly, Debtor has refused to file an adversary to marshal the assets of the estate, presumably because such an action could subject Commercial Bank's interest in the Hayes' real property to the claims of creditors of the estate.

In the face of Debtor's refusal, the Committee has requested the Court to grant it derivative standing of a trustee (the debtor-in-possession in this case) to bring a marshalling complaint under § 544(a). The Committee asserts that although a trustee has the power to bring an action under § 544(a), the grant of power is not exclusive to the trustee. The Committee argues that when a trustee (or debtor-in-possession) unreasonably refuses to bring such an action, the Committee may bring the § 544(a) action under the broad powers bestowed on the Committee under 11 U.S.C. § 1109(b).

Commercial Bank opposes the Committee's motion arguing that the trustee's powers under § 544(a) cannot be delegated to the Committee based on the United States Supreme Court's decision in *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1,

120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). The Committee asserts that *Hartford* is not conclusive on whether it may obtain derivative standing from this Court to pursue an action under § 544(a).

In *Hartford*, the Supreme Court discussed whether a party in interest could assume the powers granted to the trustee under 11 U.S.C. § 506(c). *Id.* at 3, 120 S.Ct. 1942. That section provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). An administrative claimant attempted to invoke this provision to receive payment from property encumbered by a secured creditor's lien. The secured creditor objected to the administrative claimant's standing to seek payment under § 506(c).

The Supreme Court analyzed the language of § 506(c) using the plain meaning rule. *Hartford*, 530 U.S. at 6, 120 S.Ct. 1942. The Court found the statute plainly specified who may use § 506(c)—the trustee. *Id.* The Court rejected the administrative claimant's argument that because the language of that statute did not expressly grant power exclusively to the trustee, other parties in interest had standing to bring an action under § 506(c). *Id.* The Court reasoned that in a situation in which a statute "authorizes specific action and designates a particular party empowered to take [that action] it is surely among the least appropriate [circumstance] in which to assume nonexclusivity." *Id.* The Court

1. Section 544(a) provides that:
 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any

transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . .
11 U.S.C. § 544(a).

also noted that the trustee's unique role in bankruptcy makes it entirely plausible that Congress would grant power to him and not to others. *Id.* at 7, 120 S.Ct. 1942.

Albeit in dicta, the Court specifically rejected the argument that § 1109(b)'s general provision of a right to be heard evidences the right of a nontrustee to invoke the power granted to the trustee under § 506(c).[2] *Id.* at 8, 120 S.Ct. 1942. Section 1109 provides that a "party in interest, including ... a creditors' committee, ... may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Court stated that § 1109(b)'s general provision of a right to be heard is not broad enough to allow a creditor standing "to pursue substantive remedies that other Code provisions make available only to other specific parties." *Id.*

However, the question of whether a creditor or other interested party may obtain derivative standing to bring an action when a trustee has refused to act was not resolved in *Hartford.* In a footnote, the Court recognized the practice of granting derivative status to nontrustees but specifically declined to address the merits of the practice. *Id.* at 13 n. 5, 120 S.Ct. 1942. The federal courts are split on whether derivative standing is available to nontrustees.

 Several courts have granted derivative standing to interested parties when a trustee/debtor-in-possession has refused to act. *See, e.g., In re The Gibson Group, Inc.,* 66 F.3d 1436 (6th Cir.1995). In order to merit derivative standing, the interested party must show that it has a colorable claim that would benefit the estate, a demand has been made upon the trustee/debtor-in-possession to act, the demand has been refused, and that the trustee/debtor-in-possession's refusal to act is unjustified. *Id.* at 1438. The existence of an unpursued colorable claim that would benefit the estate is sufficient to meet the interested party's burden to show that the inaction was unjustified. *Id.* at 1440.

Bankruptcy courts who have granted derivative standing to interested parties in place of the trustee/debtor-in-possession assert that the power to grant standing is derived from the court's equity power. *In re SRJ Enterprises, Inc.,* 151 B.R. 189, 194 (Bankr.N.D.Ill.1993). Bankruptcy courts' equitable power is expressed in 11 U.S.C. § 105(a) which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

Other federal courts have determined that the Bankruptcy Code does not grant standing, derivative or otherwise, to interested parties when the plain language of the statute grants a right of action to only the trustee. *See, e.g., Surf N Sun Apts. Inc. v. Dempsey,* 253 B.R. 490, 493–94 (M.D.Fla.1999). The court in *Surf N Sun Apts., Inc.* rejected the use of equity power under § 105(a) as the basis for a court to grant standing to a creditor when Congress has clearly granted the power to act only to the trustee (the case involved an action under 11 U.S.C. § 503(b)(3)(b)). The court reached this conclusion based on the Supreme Court's discussion in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In *Norwest Bank,* the Supreme Court stated that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id.* at 206, 108 S.Ct.

---

2. This determination was dicta because the case before the Court had been converted to a Chapter 7 bankruptcy before the administra-tive creditor sought to use § 506(c). The creditor was citing to § 1109 in support of its argument that it had standing to use § 506(c).

963. The *Surf N Sun Apts., Inc.* court concluded that when Congress clearly and plainly grants the power to act to the trustee under a section of the Code, the limitation of equity power expressed in *Norwest Bank* precludes a bankruptcy court from granting derivative standing to any other party. The *Surf N Sun Apts., Inc.* court suggested that judicially stretching the language of the Code to create derivative standing to nontrustees is not necessary because dissatisfied creditors have other avenues for relief such as filing a motion to compel the trustee/debtor-in-possession to act or filing a motion to remove the trustee (or to appoint a trustee in a case where a debtor-in-possession has refused to act). *Surf N Sun Apts., Inc.*, 253 B.R. at 494.

The rationale behind denying derivative standing to nontrustees has merit when Congress has granted the power to act solely to the trustee. The Supreme Court's decision in *Hartford* reinforces the premise that only the trustee, when clearly identified by Congress, may exercise power under various provisions of the Code. The Supreme Court in *Norwest Bank* emphasized that the bankruptcy courts' equitable powers are limited by the clear language of the Code. These two cases combine to suggest that derivative standing cannot be granted under the Code when the trustee has been specifically designated some power to act.

However, two matters give this Court pause in holding that derivative standing is not available to the Committee in the pres-ent case. First, the Supreme Court in *Hartford*, while expressly acknowledging the practice of federal courts of granting derivative standing, side-stepped addressing the merits of the practice and left it for another day. Second, and more importantly, Eighth Circuit precedent has recognized a bankruptcy court's power to grant derivative standing to nontrustees.

In *Nangle v. Lauer*, 98 F.3d 378 (8th Cir.1996), the Eighth Circuit implicitly recognized that a party other than the trustee may bring an action under a Code provision which grants power only to the trustee.[3] In the context of a creditor seeking to bring a preferential transfer action, the court stated that "[a]bsent evidence that the trustee cannot be relied upon to assert such claims, [the claims] may not be brought by creditors." *Id.* at 388. In addition the court stated that "[b]ecause plaintiffs alleged no facts to support an inference that the bankruptcy trustee was unable or unwilling to pursue claims on behalf of the estate, they had no standing to bring a claim under Section 548." *Id.*

These statements reflect the Eighth Circuit Court of Appeals' position that derivative standing is available to nontrustees when the trustee/debtor-in-possession is unable or unwilling to pursue claims on behalf of the estate. While the Court finds that the two Supreme Court cases discussed above create a reasonable argument to deny derivative standing, the Court is constrained by the Eighth Circuit's direct suggestion that derivative standing is available when a trustee is

3. The Court notes that the Eighth Circuit Court of Appeals' decision in *Nangle* was not in conflict with the Supreme Court's holding in *Hartford* (in fact, it was the Eighth Circuit's decision that was upheld in *Hartford*). In addition, the Eighth Circuit's decision in *Nangle* was made eight years after the Supreme Court's decision in *Norwest Bank* expressing a limitation on bankruptcy courts' equity pow-ers. In reaching its decision in *Nangle,* the Eighth Circuit suggested that derivative standing was available to nontrustees. The court made this determination with *Norwest Bank* in the background. The court must have concluded that *Norwest Bank* did not curtail bankruptcy courts' equitable power to grant derivative standing when a trustee un-reasonably fails to act.

unwilling to pursue claims on behalf of the estate.

 The Committee's motion and its representations at the hearing on January 23, 2002, established that a colorable claim exists for a marshalling of assets complaint which might allow the inclusion of Commercial Bank's deed of trust in the Debtor's estate. The Committee made a demand on the Debtor to bring a marshalling complaint. The Debtor refused the demand. The existence of the Committee's unpursued colorable claim which would benefit the estate is sufficient to meet the Committee's burden to show that the inaction was unjustified. *In re The Gibson Group, Inc.*, 66 F.3d at 1440. Accordingly, the Court will grant the Committee's motion for derivative standing to file an adversary complaint under § 544(a).

An Order consistent with this Memorandum Opinion will be entered this date.