**In re PRO GREENS, INC., a Nevada corporation, Debtor.**

**Syndicate Exchange Corporation, Plaintiff,**

**v.**

**Raymond T. Duffy, LR IRL Corporation, a Delaware corporation; Supergrass, Inc., a Florida corporation; and International Turf Applicators, Inc., a Florida corporation, Defendants.**

**Bankruptcy No. 02–02422–8P7. Adversary No. 02–504.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 2, 2003.

Steven M. Berman, Berman & Norton Breman, Professional Association, Tampa, FL, for Plaintiff.

Traci K. Strickland, Madeira Beach, FL, Chapter 7 Trustee.

Robert A. Soriano, Tampa, FL, for Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

The matters under consideration in this Chapter 7 liquidation of Pro Greens, Inc. (Debtor) are two Motions for Summary Judgment, one filed by Raymond T. Duffy, LR IRL Corporation, Supergrass Inc., and International Turf Applicators Inc. (collectively referred to as "Defendants") and the other filed by Syndicate Exchange Corporation (Syndicate). The Motions are filed in Adversary Proceeding No. 02–504, commenced by Traci K. Strickland the Chapter 7 trustee of the estate (Trustee) against the parties named as the Defendants. The Trustee originally filed her Complaint on June 25, 2002, but it was later amended on February 20, 2003. The Amended Complaint sets forth three separate claims in three separate Counts.

In Count I, the Trustee contends that certain personal properties are property of the Debtor's estate; that they are in the possession and under the control of the Defendants without specifying which of the four Defendants has possession and control of the property involved; that the Trustee is entitled to the immediate possession of the equipment; and pursuant Section 542 of the Code, they should be ordered to return the properties of the estate.

In Count II, the Trustee contends that the Defendants wrongfully detained the equipment and deprived the Debtor of the use and benefit of the equipment, and based on the foregoing, the Trustee is entitled to recover damages for the value of the use of the equipment from September 6, 2000 until the date of return of possession of the equipment

The Claim in Count III is based on the Trustee's contention that pursuant to the proposed purchase agreement, which was in fact never consummated for failure to comply with the payment terms, the transfer of the equipment of the Defendants was without the Debtor receiving reasonably equivalent value in exchange for the equipment, and the Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer. The claim in this Count appears to seek recovery based on a contention that the transfer involved was fraudulent although the pleading fails to reveal whether or not the recovery is sought pursuant Sections 548 or 544(b) of the Code and *Fla. Stat.* § 726.101 et seq.

Although, the Amended Complaint was ostensibly filed by the Trustee and the Trustee is the only plaintiff named in the Complaint, it appears that in the main bankruptcy case, on January 21, 2003, before the Trustee filed the Amended Complaint, she filed a Motion to Sell Property of Estate, which included the choses in actions against certain entities that are the subject of several Complaints filed by the Trustee, including the claim involved in this Adversary Proceeding. On March 25, 2003, in the main bankruptcy case, this Court entered an Order and authorized sale and the assignment of the choses of actions to Syndicate with the proviso that the sales where "AS IS" with no guarantee, contingencies of recovery, warranties of any kind express implied, or otherwise and preserved all defenses of the Defendants. The Order further provided that Syndicate shall file an appropriate pleading within 30 days to effectuate the substitution as plaintiff in each of the actions sold by the Trustee. On April 21, 2003, Syndicate filed a Notice of Substitution Real Party of Interest to effectuate the substitution as the plaintiff in this Adversary Proceeding.

The immediate matters under consideration are the two Motions of Summary Judgments filed by the Defendants and by Syndicate. It is the contention of each party that there are no genuine issues of material fact and that each is entitled to judgment in their respective favors as a matter of law.

The following facts as appear from the record are indeed without dispute and can be summarized as follows. The Defendants attack of the claims set forth in Count I where Syndicate seeks turnover of the equipment involved based upon the Defendants' contention that the equipment is not one that the Trustee may use, sell, or lease under Section 363 of the Code and, therefore, is not subject to a turnover. This is so because according to the Defendants, the equipment was not property of the estate on the date of commencement of the Chapter 11 case on February 11, 2002.

In support of this proposition, it is a contention of the Defendants that prior to the commencement of this case, the Debtor was in the business of aerifying golf courses. By late 1999, the Debtor ceased operating its business and conducted no business of any sort at the time the case was commenced. It had no employees, no cash, no account receivables, no income, no expenses, no telephone number, and no place of business. The only assets of the Debtor were three trailers located in the State of California, according to the Schedule B filed by the Debtor and certain Choses of Actions.

It is without dispute in December of 1999, Floyd–McKay Aerofier Co., Inc. (Floyd–McKay), a secured creditor of the Debtor, obtained a state court judgment by consent in the amount of $300,000 against the Debtor and the Debtor's president, Mr. Segal, who guaranteed some of the corporate obligations of the Debtor. The judgment specifically preserved the continuation of Floyd–McKay's security interest in certain patents and equipment (Equipment). On July 15, 2000, Floyd–McKay domesticated its North Carolina state court judgment in Florida.

On September 6, 2000, the Debtor; two of its affiliates, Professional Greens Turf and Aeroification Inc.; and Segal (collectively referred to as Sellers) entered into an "Agreement For The Purchase and Sale of Goods" (Agreement) (Ex. 1 of Defs.) to sell certain equipment and patents to the Defendants for $110,000. The Agreement gave Defendants the right to take immediate possession of the Equipment (Paragraph 3 of the Agreement). It is without dispute that the Equipment covered by the Agreement was delivered to the Defendants and it is conceded that the Defendants have had possession of the Equipment involved ever since. On November 2, 2000, the Sellers executed and actually delivered to Defendants an Assignment of Patent (Ex. 3 of Defs.) and on November 3, 2000, the Sellers executed a Bill of Sale (Ex. 2 of Defs.) to the Defendants. At that time, the Defendants had not yet paid the Sellers the purchase price for the Equipment and the funds were deposited in the Defendants' Attorney's trust account.

On November 21, 2000, after Floyd–McKay learned of the Defendants' purchase of the Equipment, its attorney sent a demand letter to the Defendants for the turnover of Equipment (Ex. 4 of Defs.). At that time, the Defendants transferred the funds for the purchase of the Equipment to their attorney, who put the monies in his trust account. It is undisputed that the account was a trust account and not an escrow account.

Floyd–McKay commenced a garnishment action in the Circuit Court for Hillsborough County, Florida and served the Defendants' attorney with a Writ of Gar-

nishment on the attorney's trust account. In due course, a final judgment of garnishment was entered, and the sum of $110,000 in the Defendants' attorney's trust account was paid over to Floyd–McKay. It is without dispute that after the funds were transferred, Floyd–McKay released its lien against the Equipment involved. It is equally without dispute that the Sellers never received *actual* payment of the purchase price albeit it is evident that the amount obtained should be or was credited against the Final Judgment entered in favor of Floyd–McKay against the Debtor.

On February 2, 2001, the Sellers executed and delivered another Assignment of Patent to the Defendants (Ex. 9 of Defs.). However, three days later, Mr. Segal's attorney sent a letter to the Defendants purporting to cancel the Agreement (Ex. B to Compl.).

Approximately a year later, on February 11, 2002, the Debtor filed for Chapter 11 relief and brought an adversary proceeding similar to this one, which was dismissed without prejudice when the Debtor's Chapter 11 case was converted to a Chapter 7 case. Although, the Trustee initially sought relief in the Amended Complaint pursuant to Sections 543 and 549 of the Code, these provisions were never pled. Accordingly, this Court shall not consider these claims.

Considering the Motions under consideration as they relate to the claims in Counts I and II, this Court is satisfied that the facts as recited above do not create genuine issues of material fact. Therefore, the remaining issue is which of the moving parties is entitled to summary judgment in their favor as a matter of law. Obviously, the threshold question is whether the Debtor had any cognizable legal or equitable interest in the Equipment involved in this controversy. This question can only be answered by determining the date that title of the Equipment passed to the Defendants or determining whether or not the Agreement was an offer that was or was not accepted.

In Count I, the major contention between parties is Syndicate's position that there was only an offer and not a completed sale of the Equipment, therefore, the Equipment is still property of the estate, and is subject to turnover pursuant to Section 542 of the Code. In support of this proposition, Syndicate relies on the Agreement, which was never signed by any of the Defendants, and which states, "the Buyer shall pay Seller."

It is a well-established principle that for a contract to become binding between two parties there must be an offer, acceptance, and adequate consideration given. It is evident that the Agreement, entered into by the Sellers and the Defendants on September 6, 2000, constituted an offer, but it is not clear on its face as to the acceptance of the agreed terms or whether adequate consideration was given. However, after a careful analysis of the facts relevant to this issue, it is apparent that there was an acceptance by both parties and adequate consideration was given.

It is without dispute that the Defendants took possession of the Equipment and that the Sellers signed the Agreement. Therefore, even though the Defendants never signed the Agreement, taking possession of the Equipment demonstrated an acceptance by implication. It is also without dispute that Floyd–McKay, who has a consent judgment against the Debtor, garnished the $110,000, which was on deposit in the Defendants' attorney's trust account.

Syndicate contends that consideration never passed because the Defendants deposited money into their attorney's trust account. Syndicate's proposition that the

money within this trust account is considered to still be the Defendants and not the Debtor's money is correct. However, the Sellers, including the Debtor in this case, were bound by the garnishment judgment in favor of Floyd–McKay, so the fact that the Sellers including the Debtor never received the actual purchase price that was deposited in the Defendants' attorney's trust account is of no consequence. This is so because when Floyd–McKay obtained the funds through the garnishment it was credited against the outstanding judgment obtained by Floyd–McKay. Therefore, consideration was indirectly given from the Defendants to the Sellers including the Debtor, when Floyd–McKay garnished the $110,000 from the Defendants' attorney's trust account. Thus, a contract was consummated, title passed, and the Equipment is not subject to turnover pursuant to Section 542 of the Code.

■  The claim in Count II states the same allegations as in Count I, but in this Count, relief is sought against the Defendants for wrongfully detaining the Equipment and for the deprived use and benefit of the Equipment. Thus, for the reasons discussed above, with respect to the turnover of the Equipment, relief is not necessary because the Equipment was never wrongfully detained. In addition, even if the contract had not been consummated, Syndicate still has no basis for relief given the fact that the Debtor ceased operating in late 1999. Therefore, the Debtor would not have used the Equipment even if it had possession of it. In sum, this Court is satisfied that the Defendants' Motion for Summary Judgment of these two counts (Counts I and II) should be granted.

■  This leaves for consideration the Motions for Summary Judgment as they relate to the claim set forth in Count III of the Amended Complaint. In Count III, Syndicate seeks to avoid the Debtor's sale of the Equipment to the Defendants as a fraudulent transfer under Section 548 of the Code. The difficulty of this claim is obvious for two reasons. First, the Trustee sold the claim to Syndicate; and second, the transaction clearly occurred outside of the one-year requirement, which is necessary under Section 548 of the Code to enforce a fraudulent claim. Before addressing the issue of whether or not a fraudulent transfer occurred, this Court will first consider the threshold issue of whether Syndicate, as an assignee of the Trustee, has standing to bring this claim.

Section 548 of the Code clearly states that the "trustee may avoid" any transfer of an interest made on or within one year before the filing of the petition. It is without dispute that in the instant case, the Trustee sold this claim to Syndicate. Based on this undisputed fact, the Defendants contend they are entitled to summary judgment citing *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) and *Surf N Sun Apts., Inc. v. Dempsey*, 253 B.R. 490 (M.D.Fla.1999). In *Surf N Sun*, on appeal the District Court held that the Bankruptcy Court erred as a matter of law in granting a judgment creditor standing to prosecute a fraudulent transfer action on behalf of the Chapter 7 bankruptcy estate. The court in its analysis looked at the legislative intent and stated, "Congress' demonstrated willingness and ability to expressly vest creditors with various rights and powers in other Code sections compels the conclusion that section 548's silence as to creditors was intentional rather accidental." *Surf N Sun*, 253 B.R. at 494. The court further stated that the plain meaning of Section 548 of the Code is obvious: "the Chapter 7 trustee has standing to pursue the action to the exclusion of all other affected parties, including creditors either individually or as a group." *Surf N Sun*,

253 B.R. at 494, *citing In re Adam Furniture Indus.*, 191 B.R. 249, 253 (Bankr. S.D.Ga.1996).

In *Hartford*, the Supreme Court also addressed the phrase "the trustee may"; however, this case dealt with how this phrase is relevant to Section 506 of the Code. The Supreme Court, in its analysis, also looked at the legislative intent finding that the most natural reading of Section 506 of the Code was that it extended only to the trustee.

This Court is persuaded by the analysis and reasoning set forth in *Surf N Sun* and *Hartford*, respectively. A plain reading of the Section 548 of the Code leaves no doubt that the power to prosecute fraudulent transfer actions is left solely to the trustee. In light of the foregoing, Syndicate has no standing to bring this claim.

This is not to say that in a Chapter 11 case, a non-trustee may not attain derivative standing. A reorganization trustee, post-confirmation, may pursue claims, including avoidance actions against third parties, on behalf of the estate if the confirmed plan and order of confirmation so provides. It is a common provision in an order of confirmation to specifically retain jurisdiction by the court over the enforcement of choses of actions. This is true even prior to pre-conformation of a plan where a debtor-in-possession unreasonably refuses to pursue an avoidance claim. *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003).

In the alternative, even if Syndicate has standing, a point not conceded, to prosecute this claim, it would be barred by the requirement of Section 548(a)(1) of the Code, which provides that transactions sought to be avoided as fraudulent under this section must have occurred on or within one year before the filing of petition. In this case, it is without dispute that the transaction occurred on September 6, 2000, and the Petition was filed on February 11, 2002, thus, transaction is well beyond the one-year requirement. This Court is satisfied that based on the reasoning set forth above, it is proper to grant the Defendants' Motion for Summary Judgment as it pertains to Count III.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. No. 20) be, and the same is hereby, granted as to all three Counts of the Amended Complaint. It is further

ORDERED, ADJUDGED AND DECREED that Cross Motion for Summary Judgment (Doc. No. 26) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that a separate Final Judgment shall be entered in accordance to the foregoing.