**In re Donald Furman FOX, Debtor.**

**United Phosphorus, Ltd.,**
**Plaintiff–Appellant,**

v.

**Phyllis R. Fox, Defendant–Appellee,**

**Jody Fox, Defendant.**

**United Phosphorus, Ltd.,**
**Plaintiff–Appellant,**

v.

**Donald Furman Fox, Defendant–**
**Appellee.**

BAP No. KS–03–011.
Bankruptcy No. 98–20105–11.
Adversary Nos. 99–6080, 98–6033.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

March 15, 2004.

Nancy S. Jochens, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO (Floyd R. Finch, Jr. with her on the brief), for Plaintiff–Appellant.

Dan K. Wiley of Murray, Tillotson, Nelson & Wiley, Chartered, Leavenworth, KS, for Defendant–Appellee Phyllis R. Fox.

Before BOHANON, CORNISH, and STARZYNSKI [1], Bankruptcy Judges.

### OPINION

BOHANON, Bankruptcy Judge.

Appellant, United Phosphorus, Ltd., appeals the decision of the bankruptcy court dismissing its complaint.[2] For the reasons explained below, we AFFIRM the bankruptcy court.

#### Background

United Phosphorus Ltd., the Appellant, is a creditor of this Chapter 11 bankruptcy estate.

Prior to his bankruptcy, the Debtor transferred some valuable real estate to

---

1. The Honorable James S. Starzynski, Chief Judge, United States Bankruptcy Court for the District of New Mexico, sitting by designation.

2. The order being appealed was entered in two adversary proceedings: number 99–6080, *United Phosphorous, Ltd. v. Phyllis R. Fox and Jody Fox,* and number 98–6033, *United Phosphorous, Ltd. v. Donald Furman Fox.* The notice of appeal also listed both adversary proceedings, and we therefore list both adversary proceedings on this Court's caption. However, the bankruptcy court's docket reflects that adversary number 98–6033 was closed on July 18, 2001. The Court therefore questions why the order being appealed was entered in number 98–6033. The Appellant's arguments relate only to number 99–6080, and only the Appellee in 99–6080, Phyllis R. Fox, filed a brief. The Court will therefore refer only to 99–6080 in this Opinion.

Appellee Phyllis R. Fox, who is his wife. When the Debtor, as debtor in possession, refused to sue his wife to avoid this transfer as fraudulent, United Phosphorus brought a complaint against her[3] as a derivative suit. Ms. Fox moved to dismiss the complaint for United Phosphorus's failure to obtain leave of the court to bring it. Judge Julie Robinson denied the motion and entered an order *nunc pro tunc* allowing United Phosphorus to prosecute the complaint as a derivative suit.

Later, Judge Robinson held the complaint in abeyance to allow the Debtor to satisfy United Phosphorus's claim through his confirmed plan of reorganization. The Debtor defaulted on his plan payments, and United Phosphorus sought leave to continue with its complaint. At this point, the case had been transferred to Judge John Flannagan, who concluded that under 11 U.S.C. § 548 only trustees can sue to avoid fraudulent transfers and dismissed the complaint. United Phosphorus then brought this appeal.

### Standard of Review

■ Because the issue on appeal concerns the application of the proper legal standard, the appropriate standard of review is *de novo*. *See Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440 (6th Cir.1995).

### Discussion

■ The core issue is whether creditors may bring derivative suits on behalf of the bankruptcy estate. We agree with Judge

Flannagan that the Bankruptcy Code does not allow such suits.

Among other things, the bankruptcy court concluded that only trustees or debtors in possession[4] have standing to bring fraudulent transfer complaints. This appeal presents us with the issue of whether creditors and committees can bring derivative suits to collect assets for the bankruptcy estate when, for whatever reason, the trustee or debtor in possession does not bring the action.

This confronts us with a dilemma. Do we obey the literal language of § 548 and our understanding of the Supreme Court's decision in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), or do we follow the reasoning of the Court of Appeals for the Third Circuit in *Official Committee of Unsecured Creditors of Cybergenics Corp., on Behalf of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir.2003) (en banc)?

To begin, we consider the statute and find it to be explicit, unambiguous, and absolute. It clearly says that "[t]he trustee may avoid any transfer . . . ." 11 U.S.C. § 548(a)(1). In pertinent part, it says nothing more and nothing less than this plain statement.

In *Hartford*, by a unanimous decision, the Court reiterated, in construing virtually identical language of another section of the Bankruptcy Code,[5] that when a statute is plain and unambiguous the courts are to apply it according to its own language and not embellish what Congress has said. It

---

**3.** Also named a defendant in the complaint was the Debtor's daughter, Jody Fox. She has been dismissed from the adversary proceeding and is not a party to this appeal.

**4.** Under 11 U.S.C. § 1107(a) debtors in possession have the rights and powers of trustees.

**5.** Section 506(c) of the Bankruptcy Code says "[t]he trustee may recover . . ." 11 U.S.C. § 506(c).

quotes *Sutherland on Statutory Construction* in saying that " '[w]here a statute . . . names the parties granted [the] right to invoke its provisions, . . . such parties only may act.' " *Hartford*, 530 U.S. at 6–7, 120 S.Ct. 1942.

The mandate of both the decision and the statute say unequivocally that only trustees may assert these statutory remedies. We are mindful that in a footnote *Hartford* recognizes that some courts have permitted creditors or committees to bring derivative suits, pointing out that Hartford Underwriters, the petitioner, brought its suit independently and did not first obtain permission from the bankruptcy court. The Court says that it is not addressing the situation confronting us, where the Appellant did obtain permission and brought the suit on behalf of the bankruptcy estate.[6] *See id.* at 13 n. 5, 120 S.Ct. 1942. The language used by the Court in *Hartford* is so clear and compelling, however, that we are convinced it would apply the same reasoning to this case and reach the same conclusion.

On the other hand, we also heed the decision of the Third Circuit in *Cybergenics*. There, a divided court concluded that under some circumstances a derivative suit by a creditors' committee will lie. The decision is largely based upon the majority's reasoning that it is better policy to allow creditors to bring such complaints in order to enhance the value of bankruptcy estates in cases where a trustee or debtor in possession will not act. The majority decision contains an exhaustive discussion of the rights and remedies available to creditors and committees and concludes that derivative actions ought to be one of them. The dissent, however, says that courts "should not . . . presume that [they] have a free hand to broaden a right which Congress has made exclusive." *Cybergenics*, 330 F.3d at 581 (Fuentes, J., dissenting).

Because the Court of Appeals for this Circuit has not directly addressed the issue, we must choose one of the two outcomes.[7]

As we have noted, the decision in *Cybergenics* contains an analysis of why it would be good policy to allow such suits. It largely concludes that if the creditor or committee cannot sue it would be without effective remedies to pursue a potentially valuable estate asset. The contrary argument can also be made, viz. that Congress did provide other remedies for creditors and, therefore, gave the trustee the exclusive authority to avoid transfers. Throughout the decision the Third Circuit makes statements such as a debtor in possession may "unjustifiably" refuse to bring the suit, *id.* at 566; that the debtor in possession may violate its "fiduciary duty" to enhance the estate, *id.* at 568; or that debtors in possession often will have "conflicts of interest" that would prevent them from suing certain parties to whom they may be related in some fashion or other, *id.* at 573.

These sorts of dereliction of duty would be cause for appointment of a trustee under 11 U.S.C. § 1104 or dismissal or con-

---

6. At oral argument, United Phosphorus's counsel stated that the complaint was brought on behalf of the estate though the record is unclear on this point.

7. We are aware that in *Starzynski v. Sequoia Forest Industries*, 72 F.3d 816 (10th Cir.1995), the court says by dictum that "a creditors' committee or even an individual creditor may, with leave of the bankruptcy court, initiate avoidance and other actions when the debtor-in-possession has failed to do so." *Id.* at 821. Because this statement was made prior to the decision in *Hartford* and is dictum, we do not take it to be binding law of the Circuit on the issue confronting us.

version under 11 U.S.C. § 1112. Additionally, if a trustee refuses for whatever reason to pursue a valuable asset, the creditors' remedy is his or her removal under 11 U.S.C. § 324. These remedies are the ones Congress saw fit to provide for creditors and committees in such cases.[8]

When entities other than the trustee or some other specified party are allowed to initiate contested matters or adversary proceedings the scheme of the Bankruptcy Code is to place that authority in a "party in interest." *See e.g.,* 11 U.S.C. §§ 105(a) and (d); 1104(a), (b), and (c); 1121(c), (d), and (e); 362(d); 1301(c); 704(7); 1102(a)(2) and (3); 1301(c); 1307(c) and (d); 502(a); 1126(e); 1328(e); 727(c)(2); 1112(b); 304(b); 1128(b); 1108; 1109(b); 1105; 554(b); and 303(g). These are but a few examples of where the term "party in interest" is used in the Code. This demonstrates that Congress at some times meant for the act to be taken exclusively by a specified entity, such as the trustee, and in other cases allowed for it to be taken by other parties. The term "party in interest" is not defined in the Bankruptcy Code, placing discretion in the courts to determine who may act. Allowing avoidance actions to be brought only by the trustee does not permit any discretion for the courts to give that right to someone else, regardless of why Congress made this choice.

*Cybergenics* discusses many reasons why it would be good policy for parties other than the trustee to bring derivative complaints, and it is hard to disagree with the reasons set forth by the majority. We, however, believe this reasoning is best considered by Congress, and it is not up to us to create a remedy for creditors it has not granted to them, especially when that right is given exclusively to the trustee. Here, the statute is absolute and allows us no discretion to vary from what it says. *See In re Horwitz,* 167 B.R. 237 (Bankr. W.D.Okla.1994).

Furthermore, granting the trustee the exclusive right to bring avoidance complaints is not "absurd." *Lamie v. United States Trustee,* — U.S. ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). *See also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). And the Supreme Court has admonished us repeatedly that it is only when the result is absurd or demonstrably at odds with Congressional intent that the courts can disobey the statute's literal language. *See also Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); *Surf N Sun Apts., Inc. v. Dempsey,* 253 B.R. 490, 494–95 (M.D.Fla.1999) ("The bankruptcy court may not, however, unilaterally confer standing upon the creditor to pursue the claim itself. If such authority is to be granted, it must come from Congress and not the courts.").

Here, the enactment is not at odds with a demonstrated Congressional intent, and consequently we must apply it as written.

**8.** As discussed in *Cybergenics* innovative creditor's counsel might find other permissible ways to achieve the objective, such as seeking an examiner with expanded powers or negotiating for language in a plan which would allow for the avoidance action to be brought by a representative of the estate. *See* 11 U.S.C. § 1123(b)(3)(b). The creditor could also assist the trustee with the litigation with approval of the bankruptcy court. *See Glinka v. Murad (In re Housecraft Indus. USA, Inc.),* 310 F.3d 64 (2d Cir.2002). Another possibility might be for the creditor to intervene in a suit brought by the trustee under Rule 7024(b) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr.P. 7024(b).

■ United Phosphorus also asserts that Judge Flannagan erred by not following Judge Robinson's previous order granting it derivative standing. It argues that this violated the rule of law of the case. We disagree.

The Supreme Court notes:

[T]he law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citations omitted). Thus, while courts are usually reluctant to revisit an issue once decided, they have discretion to vary an earlier decision. *See* 18B Charles Allan Wright, Arthur R. Miller & Edward. Cooper, *Federal Practice and Procedure* § 4478, at 637 (2nd ed.2002) ("Reluctance, however, does not equal lack of authority.").

The Tenth Circuit has recognized three narrow circumstances in which departure from law of the case is permissible. These are as follows:

(1) when the evidence in a subsequent trial is substantially different;

(2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or

(3) when the decision was clearly erroneous and would work a manifest injustice.

*Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1241 (10th Cir.2000). *See also White*

*v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967) (listing same factors).

In the present case, we conclude that the second exception to law of the case is applicable here, for Judge Robinson granted United Phosphorus derivative standing in February 2000 and *Hartford* was not decided until May. There is no reason to reverse Judge Flannagan simply to adhere to the doctrine of law of the case, for his decision was the correct one in light of this subsequent authority. The Court of Appeals for the Seventh Circuit recognized this when it wrote:

Regardless of the impact of any law-of-the-case rule, our duty is to determine whether the judgment of [the lower court] is correct. In fact, we should sustain any judgment from which an appeal has been taken if it is supported by the record and the law, regardless of whether the lower court has ruled erroneously or has ruled at all on that ground. *Obviously we cannot be expected to reverse a correct decision by one district Judge simply because we find that it is contrary to a prior ruling by another district judge in the same case, i.e. contrary to the "law of the case".*

*Parmelee Transp. Co. v. Keeshin*, 292 F.2d 794, 797 (7th Cir.1961) *cert. denied*, 368 U.S. 944, 82 S.Ct. 376, 7 L.Ed.2d 340 (1961) (emphasis added).

Hence, we reject United Phosphorus's argument that Judge Flannagan erred by ruling contrary to Judge Robinson's earlier order.

### Conclusion

Accordingly, we affirm the order dismissing the complaint.