■ FUENTES, Circuit Judge,
with whom Circuit Judges Sloviter, Alito and Smith join, dissenting.
In this case, the majority interprets the phrase “the trustee may,” in § 544(b)(1) of the Bankruptcy Code, to mean that the trustee and a creditors’ committee may seek recovery under the statute. Although the majority does not conclude that the phrase is ambiguous or that its meaning is in any way obscure, it has, nonetheless, broadened the statute to add a party that Congress specifically omitted. The majority reasons that, while no specific statutory authority grants a creditors’ committee standing, several Code provisions, pre-Code practice, public policy, and the bankruptcy court’s equitable powers all combine to afford a creditors’ committee “derivative” standing under § 544(b)(1). I respectfully disagree. The majority’s view is inconsistent with the plain and natural reading of § 544, is not supported by the Code provisions it cites, is not adequately grounded in prior practice and, perhaps more importantly, is inconsistent with the Supreme Court’s plain meaning analysis of the identical phrase in Hartford Underwriters. Accordingly, I respectfully dissent.
I.
The central question here is whether the Committee has standing to seek relief under § 544(b)(1). I begin, as did the Supreme Court in Hartford Underwriters, with the observation that “Congress ‘says in a statute what it means and means in a statute what it says there.’ ” 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). I note as well that the “analysis of any statute, including the Bankruptcy Code, must not begin with external sources, but with the text itself.” Bank of America Nat. Trust and Sav. Ass’n v. 203 North LaSalle Street Partnership, 526 U.S. 434, 459, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999) (Thomas, J., concurring) (citing Germain, 503 U.S. at 253-54, 112 S.Ct. 1146; Union Bank v. Wolas, 502 U.S. 151, 154, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991)).
Section 544(b)(1) contains no textual ambiguity. The statute, by its express terms, provides for specific action and authorizes only the trustee to act. In Hartford Underwriters, the Supreme Court recognized that, “ ‘[w]here a statute ... names the parties granted [the] right to invoke its provisions, ... such parties only may act.’” 530 U.S. at 6-7, 120 S.Ct. 1942 (quoting 2A N. Singer, Sutherland on Statutory Construction § 47.23, p. 217 (5th ed. 1992)). The Court also observed that “a situation in which a statute authorizes spe *581 cific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity.” Id. at 6, 120 S.Ct. 1942. That is precisely the circumstance here. Section 544 provides for the avoidance of “any transfer of an interest” of the debt- or’s property and it designates the trustee, and only the trustee, as the party who may act under the statute. We should not, therefore, presume that we have a free hand to broaden a right which Congress has made exclusive.
Clearly if Congress had wanted to authorize a party other than the trustee to invoke the remedies of § 544, it could simply have done so as it has in many other provisions of the Bankruptcy Code.[1] Since Congress has specifically authorized a creditors’ committee to act in various other provisions of the Code, biit has not done so with regard to § 544, we should “‘presume[ ] that Congress aet[ed] intentionally and purposely in the disparate ... exclusion.’ ” Duncan v. Walker, 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting Bates v. United States, 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)). Indeed, as the Court noted in Hartford Underwriters, “the fact that the sole party named — the trustee — has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others.” 530 U.S. at 7, 120 S.Ct. 1942.[2]
As the Supreme Court stated, when the language of a statute is plain, as it is here, “ ‘the sole function of the courts’ — at least where the disposition required by the text is not absurd — ‘is to enforce it according to its terms.’ ” Hartford Underwriters, 530 U.S. at 6, 120 S.Ct. 1942 (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 *582 L.Ed. 442 (1917))). The plain text of § 544 makes clear that only the trustee may invoke the remedies under the statute.
II. Other Code Provisions
The majority does not contend that enforcing § 544 as written would produce an absurd result. Nevertheless, the majority looks beyond the text of § 544 to determine whether a creditors’ committee has “derivative” standing. Specifically, the majority asserts that §§ 1109(b) and 1103(c)(5) of the Bankruptcy Code, paired with § 503(b)(3)(B), make it “unmistakably clear that Congress approved of creditors’ committees suing derivatively to recover property for the benefit of the estate.” I respectfully disagree. The majority also contends that § 544 must be considered in light of the equitable powers of the bankruptcy courts, pre-Code practice, and policy concerns. I address these arguments in turn.
A. Section 1109(b)
Section 1109(b) states that a “party in interest, including the debtor, the trustee, a creditors’ committee, an equity security holders’ committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [Chapter 11].” 11 U.S.C. § 1109(b) (emphasis added). This Court has liberally construed § 1109(b) to grant a creditors’ committee a broad right to be heard, including among other powers, an unconditional right to intervene in a Chapter 11 adversary proceeding that has been initiated by a trustee. See Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1232 (3d Cir.1994); Matter of Marin Motor Oil, Inc., 689 F.2d 445, 446 (3d Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983).
However; this provision does not confer authority upon a creditors’ committee to initiate an action when the trustee or debtor-in-possession declines to bring suit. Section 1109(b) only establishes a right to be heard by way of intervention as a party plaintiff when a proceeding has already been brought by the statutorily authorized party. Courts that have found authority for creditors to bring avoidance actions under this provision have noted that “a general right to be heard would be an empty grant unless those who had such a right were allowed to act when those who should act did not.” Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d 1351, 1363 (5th Cir.1986) (quoting 5 Collier on Bankruptcy ¶ 1109.02(3) (15th ed. 1986)). Yet § 544(b), read in light of Hartford Underwriters, grants an exclusive right of action to the trustee, and a broad “right to be heard” provision may not expand the intent evidenced by the plain, specific language used by Congress in § 544(b).
Any doubt on this question is eliminated by the Supreme Court’s statement in Hartford Underwriters, albeit in dicta, indicating that the Court would not read § 1109(b) to allow a non-trustee to bring suit under a provision stating only that “the trustee may.” After acknowledging that § 1109(b) was “by its terms inapplicable” in Hartford Underwriters because the case arose under Chapter 7 rather than Chapter If, the Court stated, “[i]n any event, we do not read § 1109(b)’s general provision of a right to be heard as broadly allowing a creditor to pursue substantive remedies that other Code provisions make available only to specific parties.” 530 U.S. at 8-9, 120 S.Ct. 1942 (citing 7 L. King, Collier on Bankruptcy & ¶ 1109.05 (rev. 15th ed. 1999) (“In general, section 1109 does not bestow any right to usurp the trustee’s role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate.”)). This is consistent *583 with our prior interpretation of § 1109(b), and it strengthens my view of the statute.
B. Section 1103(c)(5)
Section 1103(c)(5) of the Bankruptcy Code provides that “[a] committee appointed under section 1102 of this title may perform such other services as are in the interest of those represented.” 11 U.S.C. § 1103(c)(5). This section does not, as the majority acknowledges, confer express authority for the Committee “independently to initiate an adversary proceeding, including one under § 544(b).” Nonetheless the majority argues that such authority may be found in the “flexible representation” role of a creditors’ committee evidenced by § 1103(c)(5). I do not read § 1103(c)(5) to suggest, in any way, a committee’s authority to file a lawsuit.
The powers granted to committees under § 1103 (c) (1) - (4) are very specific. They include the power to (1) consult with the trustee or debtor, (2) investigate the debtor’s acts and financial condition, (3) participate in the bankruptcy plan, and (4) request the appointment of an examiner.
None of these provisions support the authority to initiate a lawsuit. Since the grants of power in (1) to (4) are quite narrow and non-adversarial, the catch-all power should be similarly confined. See Federal Maritime Comm’n v. Seatrain Line, Inc., 411 U.S. 726, 734, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973); see also Norfolk and Western Ry. v. American Train Dispatchers Ass’n, 499 U.S. 117, 129, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) (“Under the principle of ejusdem generis, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration.”). Because Congress authorized only limited, discrete rights of participation for a committee in § 1103(c)(l)-(4), we should not read § 1103(c)(5) to grant a broad, implied power to initiate a suit under general language regarding “other services as are in the interest of those represented.”
C. Section 503(b)(3)(B)
The majority argues that, while §§ 1109 and 1103 provide “at best indirect evidence that Congress granted bankruptcy courts the power to confer derivative standing” upon creditors’ committees, a third section, 503(b)(3)(B), provides “far more direct insight into bankruptcy courts’ powers.” I disagree on this point as well.
Federal courts have consistently held that § 503(b)(3)(B) does not itself confer standing. Instead, this section merely authorizes the recovery of certain administrative expenses incurred by “a creditor that recovers, after the court’s approval, for the benefit of the estate any property transferred or concealed by the debtor.” 11 U.S.C. § 503(b)(3)(B). Thus, this section “only authorizes recovery of expenses to a creditor who successfully recovered property, which is to say, a creditor who had standing in the first place.” In re SRJ Enterprises, Inc., 151 B.R. 189, 193 n. 1 (Bankr.N.D.Ill.1993). See also In re Vogel Van & Storage, Inc., 210 B.R. 27, 32 n. 4 (N.D.N.Y.1997); Surf N Sun Apts., Inc. v. Dempsey, 253 B.R. 490, 492 (M.D.Fla.1999). If a creditor does not have standing to prosecute a claim under § 503(b)(3)(B), there would seem to be even less support for the idea that this section confers derivative standing on a committee of creditors.
Nevertheless, the majority argues that “the most natural reading of § 503(b)(3)(B) is that it recognizes and rewards monetarily the practice of permitting creditors’ committees ... to pursue derivative actions.” I again disagree. The plain reading of § 503(b)(3)(B) is that it permits “a creditor,” not a creditors’ committee, to recover expenses. Indeed, the most prev *584 alent use of § 503(b)(3)(B), based on my review of the cases citing this provision, is to compensate individual creditors who object to discharge and then successfully locate and bring into the estate assets that had been transferred or concealed by the debtor. See, e.g., In re George, 23 B.R. 686, 687 (Bankr.S.D.Fla.1982); In re Antar, 122 B.R. 788, 791 (Bankr.S.D.Fla.1990); In re Spencer, 35 B.R. 280, 281 (Bankr.N.D.Ga.1983); In re Rumpza, 54 B.R. 107, 108 (Bankr.D.S.D.1985); In re Humphreys Pest Control Co., Inc., 1990 WL 191859, at *2 (Bankr.E.D.Pa. Nov. 30, 1990), aff'd, 1991 WL 136195 (E.D.Pa. July 18, 1991). See also Judy Simmons Henry, Recovery of Creditors’ Costs from the Bankruptcy Estate: Reasonable, Necessary, and ... Uncertain, 18 U. ARK. Little Rock L.J., 199, 208-19 (1996) (discussing cases in which individual creditors have been allowed to recover their expenses under § 503(b)(3)(B)); Gregg D. Johnson, Recovering a Creditor’s Expenses and Legal and Accounting Fees as an Administrative Claim, 5 Bankr. Dev. J. 463, 470-79 (1988) (same). In light of the plain language of the statute and its prevalent use, the majority’s view that § 503(b)(3)(B) rewards creditors’ committees for pursuing derivative actions is unpersuasive.
In fact, committees recover expenses under a different Code provision. That is because creditors’ committees are typically represented by an attorney and § 330 of the Code specifically provides compensation for fees and expenses of the committee’s representative. Sections 330(a)(1)(A) and (B) allow for “reasonable compensation” as well as “reimbursement for actual, necessary expenses” incurred by the committee’s representative. 11 U.S.C. §§ 330(a)(1)(A), (B). In sum, § 503(b)(3)(B) is not the proper provision for awarding creditors’ committees expenses and is not an appropriate basis from which to infer that Congress authorized creditors’ committee derivative actions under § 544. See In re S.W.G. Realty Associates, II, L.P., 265 B.R. 534, 539 (E.D.Pa.2001) (explaining that creditors’ committees’ eligibility for compensation is based on § 330(a), not § 503(b)(3)(B)); In re UNR Industries, Inc., 786 F.2d 1136, 1139 (7th Cir.1984) (stating that § 330 “provides for- reimbursement of expenses incurred by professional persons hired by the Committee with court approval ... ”).
Neither §§ 1109(b), 1103(c)(5), or 503(b)(3)(B), taken separately or together, provide sufficient statutory authority for the practice invoked by the Committee and approved by the bankruptcy court in this case. Because these Chapter 11 provisions granting significant authority to creditors’ committees do not go as far as to allow such committees to initiate avoidance actions, no matter whether the trustee fails to act and/or the creditors secure court approval, I cannot distinguish Hartford Underwriters, as the majority does, simply on the basis that Hartford Underwriters was a Chapter 7 case while here we consider a case under Chapter 11. The Committee urges this Court to go beyond a “cursory reading” of § 544(b) and examine other provisions of the Code. I have done so, and can find no provision which grants the Committee the authority denied to it in § 544(b).
III. Reliance on Equity to Confer Standing
The majority writes that while “none of the three sections discussed — 1109(b), 1103(c)(5), or 503(b)(3)(B) — seems directly to authorize ... standing .... [w]e believe that the missing link is supplied by bankruptcy courts’ equitable power.... ” To be sure, bankruptcy courts are equitable tribunals that apply equitable principles. But courts of equity must still follow the law. See Magniac v. Thomson, 56 U.S. *585 281, 299, 15 How. 281, 14 L.Ed. 696 (1853) (“[wjherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim equitas sequiter legem is strictly applicable.”). The Code is the law here and equity cannot be used to change the clear and plain language of a Code provision. This is especially true regarding a provision in which Congress explicitly specified the party authorized to act. As the Supreme Court has observed, whatever equitable powers bankruptcy courts have, they “must and can only be exercised within the confines of the Bankruptcy Code.” Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In this regard, this Court has noted that equity does not “ ‘give the court the power to create substantive rights that would otherwise be unavailable under the Code.’ ” United States v. Pepperman, 976 F.2d 123, 131 (3d Cir.1992) (quoting In re Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3d Cir.1989)); see also In re Jamo, 283 F.3d 392, 403 (1st Cir.2002) (stating that equity may be invoked only if the equitable remedy dispensed by the court “is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.”).
What happens if we adopt the principle inherent in the majority’s reasoning, that a court may use its equitable power to confer standing to a party that is explicitly omitted from a statute? The Code contains nearly 40 provisions that authorize only the trustee to act.[3] Could a bankruptcy court broaden standing to act under one provision or narrow standing under a different provision depending on its view of the equities involved? I would say not. If it were. otherwise, the Supreme Court might very well have thought it “equitable” to broaden the phrase “the trustee may” in § 506(c) and allow the administrative claimant to recover in Hartford Underwriters. It did not. If the language of the Code is not ambiguous, it seems to me simply wrong to use equity to confer derivative standing where the statute specifically names the parties who may act.
*586 For other reasons, I do not share the majority’s confidence in relying on equity as a basis for expanding § 544(b) to permit creditors’ committees to bring avoidance actions derivatively. In an analogous area, shareholder derivative actions, our jurisprudence demonstrates that equity should not be used to enlarge the category of eligible plaintiffs.
In the historical development of shareholder derivative actions, federal courts had attempted to use equity as the basis for enlarging the category of eligible plaintiffs and to permit equitable owners of stock to bring suit. See, e.g., Arcola Sugar Mills Co. v. Burnham, 67 F.2d 981, 982 (5th Cir.1933), cert. denied, 292 U.S. 630, 54 S.Ct. 640, 78 L.Ed. 1484 (1934) (enlarging the category of plaintiffs to include a pledgee of stock who had the right to protect his interests and prevent the dissipation of corporate assets). However, following the Supreme Court’s decision in Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court was the first to hold that, for purposes of derivative actions, state substantive law squarely controlled the definition of an eligible plaintiff. See Gallup v. Caldwell, 120 F.2d 90, 93 (3d Cir.1941); see also Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal PRACTICE and PROCEDURE: Civil 2d § 1826, at 44 n. 10 (1986). Implicit in our decision in Gallup is the notion that, for purposes of shareholder derivative actions, federal courts were no longer permitted to broaden the concept of a “shareholder” on the grounds of equity or otherwise. Although there are significant differences between shareholder derivative actions and § 544(b) actions, our experience with the former is relevant in one critical respect: where the text of a statute is unambiguous as to who may bring suit, principles of equity do not provide a basis for enlarging the category of eligible plaintiffs.
IV. Pre-Code Practice and Policy Concerns
After completing its comprehensive textual analysis in Hartford Underwriters, the Supreme Court concluded: “[b]ecause we believe that by far the most natural reading of § 506(c) is that it extends only to the trustee, petitioner’s burden of persuading [the Court] that the section must be read to allow its use by other parties is ‘exceptionally heavy.’ ” 530 U.S. at 9, 120 S.Ct. 1942 (citations omitted). The Supreme Court also explained that, while pre-Code practice informs the interpretation of statutory provisions that have “ambiguity in the text,” pre-Code practice may not to be used as “an extratextual supplement.” Id. at 10, 120 S.Ct. 1942. Based on these principles, the Supreme Court held that the phrase “the trustee may” in § 506, the identical phrase found in § 544(b)(1) and under review here, “leaves no room for clarification by pre-Code practice” and that “[p]re-Code practice cannot transform § 506(e)’s reference to ‘the trustee’ to ‘the trustee and other parties in interest.’ ” Id. at 11,120 S.Ct. 1942.[4]
I do not believe that the phrase “the trustee may,” which the Supreme Court found to be unambiguous in one section of the Code, becomes ambiguous simply because it appears in a different Code provision. The fact that Hartford Underwriters involved a Chapter 7 proceeding while the present case involves a Chapter 11 proceeding is of no consequence because, as previously explained, no other Code *587 provision under either chapter renders the phrase ambiguous or alters its meaning to allow courts to authorize derivative suits. Because the language of § 544 is clear, a review of pre-Code practice is totally unnecessary. The same is true with regard to the public policy concerns discussed by the majority. In light of the clear import of the language of § 544 and because the result that language commands is not absurd, there is no need to explore the public policy implications of derivative standing.
One final point. At oral argument, the Court and the parties explored other possibilities which may be available to creditors’ committees, such as: (1) seeking appointment of a trustee or an examiner to pursue allegedly fraudulent transfers; (2) requesting a bankruptcy court order compelling the debtor in possession to act; or (3) seeking an order lifting the automatic stay to allow a creditors’ committee to pursue a fraudulent transfer action in state court on the condition that any assets recovered are brought back to the estate. We are not called upon, in this case, to decide the viability of these or other possibilities. However, the many possibilities raised demonstrate that holding that creditors’ committees lack derivative standing to pursue § 544 actions will not necessarily result in forfeiture of potentially valuable causes of action.
V. Conclusion
The Bankruptcy Code does not authorize bankruptcy courts to grant derivative standing to creditors’ committees and the Supreme Court has rejected the notion that the federal courts have any policy-making role in construing clear statutory language. If it is a good idea for creditors’ committees to have standing, that is a matter for Congress, not the courts, to decide. Hartford Underwriters, 530 U.S. at 13-14, 120 S.Ct. 1942. For the foregoing reasons, I would affirm the judgment of the District Court dismissing the Committee’s complaint for lack of standing.

. See, e.g., § 110(h)(3) (naming the debtor, the trustee, a creditor, or the United States trustee); § 328(a) (naming the trustee or a committee appointed under § 1102, i.e. creditors’ and equity security holders’ committees); § 330(a)(2) (naming the court, the United States trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest); § 331 (naming a trustee, an examiner, a debtor's attorney, or any professional person employed under §§ 327 or 1103); § 343 (naming creditors, any indenture trustee, any trustee or examiner in the case, or the United States trustee); § 501(a)-(c) (naming creditors, an indenture trustee, an equity security holder, an entity liable to the debtor's creditor or that has secured such creditor, the debtor, and the trustee); § 503(b)(3)(D) (naming a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under § 1102); § 707(b) (naming the court and the United States trustee, and excluding any party in interest); §§ 727(c)(1) and (d) (naming the trustee, a creditor, or the United States trustee); §§ 1104(a) & 1105 (naming a party in interest or the United States trustee); § 1110(b) (naming the trustee and the secured party, lessor or conditional vendor whose rights are protected under § 1110(a)); § 1112(b) (naming a party in interest and the United States trustee or bankruptcy administrator); § 1121(c) (naming any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee); § 1164 (naming the Surface Transportation Board, the Department of Transportation, and any State or local commission having regulatory jurisdiction over the debtor); § 1224 (naming a party in interest, the trustee, or the United States trustee); § 1229(a) (naming the debtor, the trustee, or the holder of an allowed unsecured claim); § 1307(c) (naming a party in interest or the United States trustee); § 1329(a) (naming the debtor, the trustee, or the holder of an allowed unsecured claim).

. Congress has extended the rights and powers vested in a trustee to a debtor in possession, but has made no analogous provision for a creditors' committee. See 11 U.S.C. § 1107(a).

. See, e.g., § 108 (extending time for suits brought by the trustee); § 327(b) (allowing a trustee authorized to operate the business of the debtor to retain or replace professional persons employed by the debtor); § 327(e) (allowing the trustee to employ for a special purpose an attorney who has represented the. debtor); § 345(a) (allowing a trustee to invest money of the estate); § 363(b)(1) (allowing the trustee to use, sell, or lease property of the estate other than in the ordinary course of business, after notice and a hearing); § 363(c)(1) (allowing the trustee to enter into transactions, "including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing”); § 363(f) (allowing the trustee to sell property free and clear of any interest in such property of an entity other than the estate); § 364 (allowing the trustee to incur secured and unsecured debt); § 365(a) (allowing the trustee to assume or reject executory contracts and unexpired leases); § 365(f)(1) (allowing a trustee to assign executory contracts and unexpired leases); § 505(b) (allowing a trustee to request a determination of unpaid tax liabilities of the estate); § 506(c) (allowing a trustee to surcharge property securing an allowed secured claim); § 545 (allowing the trustee to avoid statutory liens); § 547(b) (allowing the trustee to recover preferences); § 548(a)(1) (allowing the trustee to recover fraudulent transfers); § 549 (allowing the trustee to avoid post-petition transfers of estate property); § 550(a) (allowing the trustee to recover value of avoided transfers from initial and mediate transferees); § 554 (allowing the trustee to abandon property of the estate); § 1108 (allowing a trustee to operate the debtor’s business); § 1113(a) (allowing the trustee to assume or reject collective bargaining agreements); § 1114(e)(1) (instructing the trustee to pay retiree benefits); § 1146(b) (instructing the trustee to make State or local tax returns of income for the estate of individual debtors).

. Amicus Brunstad conceded at oral argument that, were we to look to all circuit court decisions decided under the Bankruptcy Act, we would find only four or five that recognize derivative action by creditors' committees. A handful of cases do not suffice to meet appellants’ "exceptionally heavy” burden of persuasion.