# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

## No. 13-6026

_____

In re: Joseph Matthias Miller

*Debtor*

------------------------------

Terri A. Running

*Trustee - Appellant*

v.

Joseph Matthias Miller

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - St. Paul

_____

Submitted:  October 1, 2013
Filed:  November 4, 2013

_____

Before FEDERMAN, Chief Judge, SALADINO and SCHERMER, Bankruptcy
Judges.
_____

FEDERMAN, Chief Judge

Appellant Terri A. Running, the Chapter 7 Trustee in the bankruptcy case of Joseph Matthias Miller, contends that the Bankruptcy Court[1] erred in holding that an annuity owned by the Debtor qualifies as an "individual retirement annuity" under § 408(b) of the Internal Revenue Code[2] and is, therefore, exempt under § 522(b)(3)(C) of the Bankruptcy Code.[3] We affirm.

## FACTUAL BACKGROUND

The parties do not dispute the facts.[4] Debtor Joseph Matthias Miller filed a Chapter 7 bankruptcy case on June 6, 2012. On amended schedules, he listed property described as "IRA-Securian" with a value of $236,370.23 (the "Annuity"). As relevant here, the Debtor claimed the Annuity as exempt under 11 U.S.C. § 522(b)(3)(C), and the Trustee objected to the claimed exemption.[5]

---

[1] The Honorable Gregory F. Kishel, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

[2] 26 U.S.C. § 408(b).

[3] 11 U.S.C. § 522(b)(3)(C).

[4] *Stipulation of Facts*, ECF No. 98, *In re Miller*, Ch. 7 Case No. 12-33436 (Bankr. D. Minn. Apr. 16, 2013).

[5] The Debtor also claimed the Annuity exempt under § 550.37, subd. 24 of the Minnesota Statutes. In a prepetition lawsuit by a creditor against the Debtor, a Minnesota state court had expressly declared the Annuity exempt under § 550.37, subd. 24. However, since the trustee had not been a party to the state court litigation, and since the Minnesota statute limits the exemption to $69,000 "and additional amounts . . . to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor" which would have required additional evidence, the Bankruptcy Court chose to limit its discussion to the federal exemption under § 522(b)(3)(C).

The Debtor purchased the Annuity from Minnesota Life Insurance Company, a Securian Company, on April 13, 2009, for the amount of $267,319.48. The entire purchase price was rolled over from another tax-qualified individual retirement account, which would have been exempt in bankruptcy. According to the Bankruptcy Court, the Debtor was "approaching" his mid-sixties at the time of the rollover.[6]

The Annuity consists of three related documents: an Annuity Contract; an Advance Withdrawal Benefit Endorsement (the "Endorsement"); and an Individual Retirement Annuity Agreement (the "IRA Agreement"). Under the Annuity Contract, Minnesota Life was to make eight annual income payments to the Debtor in the amount of $40,497.95, beginning April 12, 2010. Pursuant to the Endorsement, the Debtor is allowed to make a single withdrawal of up to 75% of the withdrawal value, which term is defined in the Annuity as the present value of any remaining payments under the Annuity Contract. As of December 31, 2011, the fair market value of the Annuity was $236,379.23.

The IRA Agreement, which modifies the Annuity Contract and specifies that the terms of the IRA Agreement control in the event of a conflict between the Annuity Contract and the IRA Agreement, states that the entire interest of the Annuity is non-forfeitable. While the IRA Agreement states that tax penalties may apply to early withdrawals from an IRA generally, the IRA Agreement does not by its terms impose a penalty on the Debtor for an early withdrawal from this annuity.

---

[6] The annuity indicates that the Debtor was born in 1946.

Finally, of particular significance here, the Endorsement provides that "Purchase Payments are payable no later than the Contract Issue Date [April 13, 2009]," and "[n]o additional Purchase Payments are permitted after the Contract Issue Date." The Annuity states that it is a "Single Payment Immediate Annuity Contract" with "Fixed Annuity Payment Benefits." Finally, the IRA Agreement states that "[t]he annuitant has the sole responsibility for determining whether any purchase payments meet applicable income tax requirements."

The issue here is whether the Annuity complies with § 408 of the Internal Revenue Code, discussed below. If it does, then the parties agree that the Debtor may claim an exemption in it under § 522(b)(3)(C). The parties further agree that, if the Debtor had simply purchased the Annuity with one lump sum payment from assets that were not being rolled over from a tax-exempt IRA, the Annuity would not comply with § 408. That is so because the purchase price exceeded the annual limits imposed by the Internal Revenue Code. However, since the Debtor purchased the Annuity through a direct rollover from another tax-exempt IRA, the issue is whether the funds retained their tax-exempt status after the rollover. If they did, the Debtor may claim them exempt in his bankruptcy case.

STANDARD OF REVIEW

We review the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo.[7]

---

[7] *Lange v. Mutual of Omaha Bank* (*In re Negus-Sons, Inc.*), 460 B.R. 754, 755 (B.A.P. 8th Cir. 2011).

DISCUSSION

Regardless of whether a debtor's state opts out of the federal exemption scheme, § 522(b)(3)(C) of the Bankruptcy Code exempts "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under sections 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." The Bankruptcy Court concluded that the funds at issue here are held in an account that is exempt from taxation under § 408(b) of the Internal Revenue Code as an "individual retirement annuity." As a result, the Court held, the Debtor could claim the funds exempt under § 522(b)(3)(C).

Section 408(b) of the Internal Revenue Code defines an "individual retirement annuity" as an annuity contract or endowment contract, issued by an insurance company, which meets the following requirements:

(1) The contract is not transferable by the owner.

(2) Under the contract—

(A) *the premiums are not fixed*,

(B) the *annual premium* on behalf of any individual will not exceed the dollar amount in effect under section 219(b)(1)(A), and

(C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

(3) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of the owner.

(4) The entire interest of the owner is nonforfeitable.[8]

It is well established that exemption statutes are to be liberally construed in favor of the debtor.[9] The Trustee has the burden under Rule 4003(c)[10] of proving the Annuity is not exempt. The Trustee concedes that the Annuity satisfies subsections (1), (2)(C), (3), and (4) of § 408(b). At issue is subsections (2)(A) and (B).

The Trustee asserts that the plain language[11] of § 408(b)(2)(A) and (B) together requires that an individual retirement annuity have flexible, annual premiums. In contrast, she asserts, the Annuity here had a single, fixed premium (referred to in the Annuity documents as the "purchase payment") of $267,319.48.

---

[8] 26 U.S.C. § 408(b) (emphasis added).

[9] *See Wallerstedt v. Sosne* (*In re Wallerstedt*), 930 F.2d 630, 631 (8th Cir. 1991). Indeed, in *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), the Supreme Court held that IRAs are exempt under § 522(d)(10)(E) as being "similar plan[s] or contract[s]" to the "stock, bonus, pension, profitsharing, [or] annuity . . . plan[s]" listed in that section.

[10] Fed. R. Bankr. P. 4003(c).

[11] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (holding that the task of resolving the meaning of a statute "begins where all such inquiries must begin: with the language of the statute itself."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'") (citation omitted); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) ("[W]e begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there. . . .'") (citation omitted).

Indeed, the Endorsement expressly forbids additional premium payments beyond the contract issue date. The Trustee contends that since the Annuity does not require yearly contributions by the Debtor (who was of retirement age when the annuity was purchased), the rollover made the entire amount of the funds nonqualified under § 409(b).

We disagree with the Trustee that the language of the statute is plain. Indeed, as will be seen, commentators, legal forms based on the statute, and the IRA Agreement here all interpret the statute contrary to the Trustee's position. And, the Trustee cites to no case in which a court has held, or the IRS has even argued, that a rollover IRA annuity such as this one is not qualified for favorable tax treatment.

By way of general context, the Internal Revenue Service's Publication 590 defines "IRA" as an "individual retirement arrangement."[12] "An IRA is a personal savings plan that gives [a person] tax advantages for setting aside money for retirement."[13] There are several types of IRAs, including, *inter alia*, "traditional IRAs," "Roth IRAs," "SIMPLE IRAs," and "SEP IRAs."[14] A "traditional IRA" can be opened at a bank or other financial institution, with a mutual fund or life insurance broker, or through a stockbroker.[15] "[A] traditional IRA can be an

---

[12] I.R.S. Pub. 590, *Individual Retirement Arrangements* (*IRAs*) (Jan. 30, 2013) at 3 ("This publication discusses individual retirement arrangements (IRAs).").

[13] *Id.*

[14] *Id.* at 5.

[15] *Id.* at 8.

7

individual retirement account or annuity."[16] A person can open an individual retirement annuity by purchasing an annuity contract or an endowment contract from a life insurance company."[17] As one commentator has explained:

> An IRA has become the generic name for an individually directed and established savings program that permits individuals having earned income and their spouses to establish a personal retirement savings program. . . . There are two basic types of plans that can be described under the generic heading[ ] of IRA. These include IRAs described in Section 408(a) and individual retirement annuities described in Section 408(b).[18]

---

[16] *Id.*

[17] *Id.* at 9.

[18] Robert E. Madden, *Tax Planning for Highly Compensated Individuals*, ¶¶ 7.06, 7.06[1] (2000) (cited in *In re Pepmeyer*, 273 B.R. 782, 786 (N.D. Iowa 2002)). In *In re Kemmerer*, 251 B.R. 50, 53 (B.A.P. 8th Cir. 2000), a majority of this panel concluded that individual retirement annuities were distinct from individual retirement accounts under § 408 and, since the Iowa exemption statutes applicable there referred only to "individual retirement accounts," individual retirement annuities were not exempt in bankruptcy in Iowa. The Honorable Nancy Dreher dissented in that case, opining that, "in ordinary parlance, it is common to equate individual retirement annuities and individual retirement accounts." *Id.* at 55. Thereafter, in *In re Pepmeyer,* 273 B.R. 782 (N.D. Iowa 2002), the District Court for the Northern District of Iowa agreed with both Judge Dreher's dissent and the bankruptcy court in *Kemmerer*, concluding that the term "individual retirement accounts" includes both accounts and annuities. The majority opinion in *Kemmerer* has never been cited favorably or followed. Based on *Pepmeyer*, IRS Publication 590 (published in 2013), and the commentators, we agree with Judge Dreher's conclusion that the term "individual retirement account" includes annuities.

"Under the umbrella of the traditional IRA is the individual retirement annuity: an annuity contract issued by an insurance company to which the individual pays premiums instead of contributions."[19]  In order to obtain favorable tax treatment, a traditional individual retirement annuity must comply with § 408(b).

The Annuity Contract at issue here does not expressly state that it complies with § 408(b).  However, the IRA Agreement, which controls in the event of a conflict between it and the Annuity Contract, states that the provisions set forth in the IRA Agreement "will allow its use . . . as a Traditional Individual Retirement Annuity under the Employee Retirement Income Security Act of 1974 [('ERISA')], as amended . . . ."  Section 408 of the Internal Revenue Code was enacted as part of ERISA,[20] so the Annuity does, in fact, state an intent that it comply with § 408(b).

In addition, the IRA Agreement specifically refers to § 408(b) when it says that "[t]he distribution of an annuitant's value shall be made in accordance with the minimum distribution requirements of section 408(b)(3) of the [Internal Revenue] Code and the regulations thereunder . . . ."  And, the IRA Agreement mentions § 408 in the context of rollovers:

**Do purchase payment limitations apply to a rollover?**

No. Limits on purchase payments to the contract do not apply with a rollover contribution.  A rollover contribution is one within the

_____

[19]  6 *Mertens Law of Fed. Income Tax'n* § 25C:1 (Sept. 2013).

[20]  *Employee Retirement Income Security Act of 1974*, Pub. L. No. 93-406, 88 Stat. 829.

meaning of sections *408(d)(3)* [dealing with rollovers under § 408], 402(c), 403(a)(4), 403(b)(8), 408A(c)(3)(B), 408A(c)(6), 408A(d)(3) or 408A(e) of the Internal Revenue Code (herein "Code") or a purchase payment made in accordance with the terms of a SEP as described in section 408(k) of the Code. In that case, a cash purchase payment may be the amount received by or on behalf of an annuitant as all or any portion of a distribution which is a rollover contribution. The distribution may be one from an individual retirement account, annuity or bond plan; or an eligible rollover distribution from a tax-exempt employee's trust; a qualified employee annuity plan; or such other plan as may be allowed by law.[21]

Generally, if a rollover is properly made under one of these sections listed in the IRA Agreement, the funds retain their tax-exempt status,[22] and thus, their exemptability in bankruptcy cases.[23] Finally, the IRA Agreement provides that the contract "may be amended as required to reflect any change in the [Internal Revenue] Code, regulations or published revenue rulings" and that the annuitant "will be deemed to have consented to any such amendment." Therefore, although the Annuity documents place on the Debtor the ultimate responsibility for determining whether the Annuity meets applicable income tax-favored requirements, the documents clearly reflect an attempt to do so.

---

[21] Emphasis added.

[22] 6 *Mertens Law of Fed. Income Tax'n* § 25B-2:40 ("Though the general rules require the inclusion of plan distributions in gross income in the year received, amounts which are distributed by an exempt employee's trust in an eligible rollover distribution are not includable in the recipient's gross income for the tax year in which the distribution is made.").

[23] *In re LeClair*, 461 B.R. 86 (Bankr. D. Mass. 2011) (rejecting the trustee's argument that a one-time rollover of $86,000 from one tax-exempt IRA to an annuity took the annuity out of § 408(b) because it exceeded the annual contribution limit under § 219(b)(5)).

So the question is whether, regardless of the Debtor's and Minnesota Life's intent that the Annuity be tax-exempt under § 408(b) as a traditional individual retirement annuity, the fact that it does not permit additional annual premiums takes it out of compliance with that section.

Both parties urge that subsection (2)(A) – requiring that premiums not be "fixed" – must be read in conjunction with subsection (2)(B) – which states that the annual premium on behalf of any individual cannot exceed the annual dollar amount in effect under § 219(b)(1)(A) of the Internal Revenue Code. Section 219(b)(1)(A) contains the annual contribution limits out of pre-tax income if the annuity is being purchased from an individual's pre-tax earnings. In sum, the current limits for contributions to traditional IRAs are the lesser of $5,500 or the person's taxable income for the year.[24]

We question whether the Annuity's "purchase payment" was a "premium" as contemplated by the statute in the first place. In any event, since it was a rollover, the limitations of § 219(b)(1)(A) did not apply to it. And, we agree with the Debtor that the purchase price was not "fixed" by Minnesota Life inasmuch as it was whatever amount the Debtor chose to roll over from the prior IRA.

But in any event, reading subsections (2)(A) and (B) together, and bearing in mind that a fixed premium could not take the income limitations into account (*i.e.,* when a person earns less than $5,500 in a given year), we interpret the statute not

---

[24] I.R.S. Pub. 590 at 2. The IRS permits an addition $1,000 catch-up contribution for taxpayers who turn age 50 or older before 2014. *Id.*

to say that annual premiums are required, but that *if there are annual premiums*, they may not exceed the limitations of § 219(b)(1)(A).  This is consistent with the IRS' interpretation of the purpose of the "flexible annual premium" language as stated in Publication 590:  "There must be flexible premiums *so that if your compensation changes, your payment can also change*."[25]  According to one treatise:

> The annual premiums under an IRA annuity may not exceed $5,000 in 2012 [now $5,500], with catch-up contributions for individuals age 50 and older of an additional $1,000.  I.R.C. § 408(b)(2)(B) (which refers to I.R.C. § 219(b)(1)).  The premiums must not be fixed.  *After the initial premium is paid, the IRA owner is not obligated to continue to make premium payments and he or she will then own a paid-up annuity*.[26]

"This prevents an individual from being forced to make excess (nondeductible) contributions in order to make premium payments, which would occur if his or her compensation fell below the amount of a required premium payment."[27]  We thus disagree with the Trustee that the statute requires annual premiums.

As seen, those who regularly interpret the tax code suggest that rollover IRA annuities retain their tax advantaged status even though annual contributions are not required.  Indeed, any other conclusion would lead to an absurd result.[28]  The

---

[25] *Id.* at 9.

[26] 8B West's Legal Forms, Retirement Plans § 18:4 (15th ed. updated Sept. 2012) (citations omitted).

[27] *Id.* at n. 6.

[28] *See Commissioner of Internal Revenue v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965)  ("Unquestionably the courts, in

clear purpose of the disputed language is tax-related: it is intended to *limit* the contribution amounts so that people cannot shield income from taxation by having all their income going into an IRA. We can conceive of no purpose served by *requiring* an annual premium in the case of a rolled-over IRA – no matter how *de minimis* – particularly where the owner is already old enough to withdraw funds for retirement without penalty.

The Trustee cites four cases in which annuities were held to be disqualified for tax and, therefore, exemption purposes.[29] However, none of these cases involved a rollover from a tax-exempt IRA. Therefore, since the purchase price in each of those cases exceeded the yearly contribution limits, they were not exempt. Thus, those cases are inapplicable here. By contrast, in *In re LeClair*,[30] the debtor had purchased an annuity with a one-time contribution of $86,000. The trustee objected to the debtor's claimed exemption under Massachusetts law (which incorporated § 408) because the purchase price exceeded the contribution limits under § 219(b)(5). The Bankruptcy Court held that since the trustee failed to prove that the one-time payment was not the result of a rollover from one tax-exempt IRA to the annuity, it did not run afoul of § 408(b). The same is true here.

Finally, the Trustee asserts that the Annuity is not tax-exempt because the Annuity itself does not impose tax penalties, but merely provides that tax penalties

interpreting a statute, have some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results. . . or would thwart the obvious purpose of the statute.'").

[29] *In re Eilbert*, 162 F.3d 523 (8th Cir. 1998); *In re Simpson*, 366 B.R. 64 (B.A.P. 9th Cir. 2007); *In re Michael*, 339 B.R. 798 (Bankr. N.D. Ga. 2005); *In re Bogue*, 240 B.R. 742 (Bankr. E.D. Wis. 1999).

[30] 461 B.R. 86 (Bankr. D. Mass. 2011).

*may* apply to early withdrawals from an IRA and that, to the extent any such penalty applies, they "are imposed under the Code." However, the Annuity does limit the Debtor's withdrawal to 75% of the Withdrawal Value during the Withdrawal Period, and, we have held, the documents by their terms clearly intended to comply with § 408 and other applicable provisions of the Internal Revenue Code. And, as the Debtor points out, it is the IRS which imposes penalties, not the administrator or insurance company issuing the Annuity.[31] As seen, the Trustee has cited no applicable case in which the IRS has even argued, much less succeeded in arguing, that rollover IRA annuities require a continuing yearly contribution to qualify.

For the reasons stated, we affirm the well-reasoned opinion of the Bankruptcy Court.

_____

---

[31] *See, e.g.,* I.R.S. Pub. 3125, *An Important Message for Taxpayers with IRAs* (10-2009) (stating that, while the IRS issues letters to IRA sponsors, trustees and custodians "certifying that they are complying with requirements concerning investor rights, account administration, and standards for the establishment of documents that allow contributions to be deductible," "THE IRS DOES NOT APPROVE any forms of IRA investments.") (emphasis in original).