*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Ryan PARINO-RAMCHARAN, First Lieutenant
United States Air Force, Appellant

**No. 23-0245**
Crim. App. No. 40171

Argued March 6, 2024—Decided July 1, 2024

Military Judge: Elizabeth M. Hernandez

For Appellant: *William E. Cassara*, Esq. (argued); *Captain Michael J. Bruzik* and *Julie Caruso Haines*, Esq. (on brief).

For Appellee: *Colonel Matthew D. Talcott* (argued); *Mary Ellen Payne*, Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judge HARDY and Judge JOHNSON joined. Chief Judge OHLSON filed a dissenting opinion, in which Judge SPARKS joined.

———————————

Judge MAGGS delivered the opinion of the Court.

Appellant petitions this Court for review of a decision by the United States Air Force Court of Criminal Appeals (AFCCA), *United States v. Parino-Ramcharan*, No. ACM 40171, 2023 CCA LEXIS 314, 2023 WL 4743744 (A.F. Ct. Crim. App. July 25, 2023) (unpublished), which followed a review of the case by the Judge Advocate General of the Air Force. Appellant asks us to consider whether the military judge at his court-martial abused her discretion in denying his motion to suppress statements that he had made to the police concerning his wrongful use of lysergic acid diethylamide (LSD). The Government moved to dismiss Appellant's petition while it was pending with this Court. The Government argued that the Judge Advocate General of the Air Force had reviewed Appellant's case without authority, that the AFCCA therefore lacked jurisdiction to consider Appellant's appeal, and that this Court accordingly does not have jurisdiction to consider his petition. We granted review, briefing, and oral argument on the issue of "[w]hether the Judge Advocate General and the Air Force Court of Criminal Appeals lacked jurisdiction to review Appellant's case." *United States v. Parino-Ramcharan*, 84 M.J. 138 (C.A.A.F. 2023).

We now hold that the Judge Advocate General of the Air Force had authority to review and act on Appellant's case under Article 69(a) and (c)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869(a), (c)(1)(A) (2018); that the AFCCA had jurisdiction over Appellant's appeal under Article 69(d), UCMJ; and that we have jurisdiction to consider Appellant's petition under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2018). In reaching these conclusions, we determine that a key provision in Article 69(c)(1)(A), UCMJ, contains a "simple scrivener's error, a mistake made by someone unfamiliar with the law's object and design." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993). Following United States Supreme Court precedent, we " 'disregard [the scrivener's error] to render the true meaning of the statute.' " *Id.*

(quoting *Hammock v. Loan and Trust Co.*, 105 U.S. 77, 84-85 (1882)).

Having concluded that we have jurisdiction over Appellant's petition, we have also reviewed the merits of his appeal. We agree with the AFCCA's determination that the military judge did not abuse her discretion in denying Appellant's motion to suppress his statements to the police. We therefore affirm the decision of the AFCCA.

## I. Background

On the evening of July 4, 2020, Appellant engaged in erratic conduct in a civilian neighborhood. Appellant told a responding police officer that he had taken LSD. Appellant later moved for suppression of his statement on grounds that it lacked sufficient corroboration, but the military judge denied the motion. The military judge, sitting as a general court-martial, subsequently found Appellant guilty, contrary to his pleas, of one specification of wrongful use of a controlled substance in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (2018). The military judge sentenced Appellant to forfeiture of $2,000 pay per month for three months and a reprimand. The convening authority took no action on the findings or sentence and issued the reprimand.

A judge advocate, acting with authority under Article 65(d), UCMJ, 10 U.S.C. § 965(d) (2018), examined the record and concluded that the findings were correct in law and fact. Appellant then asked the Judge Advocate General of the Air Force to review the record in accordance with Article 69, UCMJ. The Judge Advocate General conducted the review, determined that there was no error, and denied relief.

Appellant applied to the AFCCA for a grant of review. The AFCCA determined that it had jurisdiction under Article 69(d), UCMJ. *Parino-Ramcharan*, 2023 CCA LEXIS 314, at *3, 2023 WL 4743744, at *2. Exercising this jurisdiction, the AFCCA considered Appellant's argument that the military judge should have suppressed his statement to the police but determined that the military judge did not

abuse her discretion. *Id.* at \*14-17, 2023 WL 4743744, at \*5-6. The AFCCA affirmed the findings and sentence. *Id.* at \*20, 2023 WL 4743744, at \*7. Appellant then petitioned this Court for review of the suppression issue. The Government, as noted above, moved to dismiss Appellant's petition for lack of jurisdiction.

## II. Standards of Review

This Court determines questions of statutory jurisdiction de novo. *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017). This Court reviews a military judge's decision on whether to admit or suppress an admission under Military Rule of Evidence (M.R.E.) 304(c) for an abuse of discretion. *United States v. Whiteeyes*, 82 M.J. 168, 172 (C.A.A.F. 2022).

## III. Analysis of Jurisdiction

To determine whether we have jurisdiction, we consider the text of Articles 65 and 69, UCMJ, the U.S. Supreme Court's treatment of scrivener's errors, and the application of Supreme Court precedent to this case.

### A. Text of Articles 65 and 69, UCMJ

The parties do not contest the appropriateness of the initial review of Appellant's case by a judge advocate under Article 65(d), UCMJ. We agree that this review was proper. Article 65(d)(2)(A), UCMJ, requires an attorney within the Office of the Judge Advocate General to review "each general and special court-martial that is not eligible for direct appeal" under Article 66(b)(1) or (3), UCMJ, 10 U.S.C. § 866(b)(1), (3) (2018). Appellant's case was not eligible for a direct appeal under the applicable version of Article 66(b)(1), UCMJ, because he had not received a sentence of confinement exceeding six months and he was not entitled to an appeal under the applicable version of

Article 66(b)(3), UCMJ, because his sentence did not include a dismissal.[1]

The parties, however, disagree about whether the Judge Advocate General had authority to review Appellant's case under Article 69, UCMJ, whether the AFCCA had jurisdiction to review the case after the Judge Advocate General reviewed it, and whether this Court now has jurisdiction. Appellant contends that Article 69(a), UCMJ, provided the Judge Advocate General authority to review his case and that Article 69(c)(1)(A), UCMJ, specified the scope of the actions that the Judge Advocate General could take. Appellant further contends that the AFCCA had jurisdiction under Article 69(d)(1), UCMJ, which provides that "[a] Court of Criminal Appeals may review the action taken by the Judge Advocate General under [Article 69(c)(1), UCMJ,] in a case submitted to the Court of Criminal Appeals by the accused in an application for review." Appellant asserts that this Court has jurisdiction under Article 67(a)(3), UCMJ, to review the AFCCA.

The Government disagrees and contends that the Judge Advocate General did not have authority to act on Appellant's case under Article 69(c)(1)(A), UCMJ. Accordingly, the Government reasons that the AFCCA did not have jurisdiction under Article 69(d)(1), UCMJ. The Government asserts that the AFCCA's lack of jurisdiction prevents this Court from reviewing the case under Article 67(a)(3), UCMJ.

The dispute between the parties therefore ultimately turns upon the "true meaning" of Article 69(c)(1)(A), UCMJ. *U.S. Nat'l Bank of Or.*, 508 U.S. at 462. The official text of Article 69(c)(1)(A), UCMJ, states:

> In a case reviewed under section 864 or 865(b) of this title (article 64 or 65(b)), the Judge Advocate General may set aside the findings or sentence, in

---

[1] Congress subsequently amended Article 66(b)(1), UCMJ, in the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544(b), 136 Stat. 2395, 2582 (2022).

> whole or in part, on the grounds of newly discov-
> ered evidence, fraud on the court, lack of jurisdic-
> tion over the accused or the offense, error prejudi-
> cial to the substantial rights of the accused, or the
> appropriateness of the sentence.[2]

As noted above, both parties agree that Appellant's case was properly reviewed by a judge advocate under Article 65(d), UCMJ, not Article 65(b), UCMJ. However, this puts the first clause of Article 69(c)(1)(A) at issue because this clause limits the Judge Advocate General's reviewing authority to cases previously reviewed under "article 64 or 65(b)," UCMJ, not cases previously reviewed under Article 65(d), UCMJ. The Government argues that Article 69(c)(1)(A), UCMJ, therefore cannot apply. Appellant responds that the reference to Article 65(b), UCMJ, in Article 69(c)(1)(A), UCMJ, is a scrivener's error and that this reference should be read as Article 65(d), UCMJ, instead of Article 65(b), UCMJ. Appellant contends that if this scrivener's error is so addressed, the Judge Advocate General had authority to act on this case under Article 69(c)(1)(A), UCMJ, and therefore that the AFCCA had jurisdiction to review the case under Article 69(d), UCMJ.

### B. The U.S. Supreme Court's Treatment of Scrivener's Errors

Many authors have written about how courts should address a scrivener's error in statutory interpretation. *See, e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234-35 (2012); Ryan D. Doerfler, *The Scrivener's Error*, 110 Nw. U. L. Rev. 811, 816

---

[2] We note that Appendix 2 of the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM)* does not accurately reprint the text of Article 69, UCMJ, as enacted by Congress. Appendix 2 indicates that the Article 69(c)(1)(A) begins with the words "In a case reviewed under section 864 or *865(d)* of this title (article 64 or *65(d)*)." (Emphasis added.) *MCM* app. 2 at A2-29. But as quoted above, the references in the official text of Article 69(c)(1) are to Article 69(b), UCMJ, not Article 69(d), UCMJ. All references in this opinion are to the official text of the UCMJ as enacted by Congress.

(2016); Andrew S. Gold, *Absurd Results, Scrivener's Errors, and Statutory Interpretation*, 75 U. Cin. L. Rev. 25 (2006). In this opinion, we cannot resolve all of the theoretical questions that scrivener's errors may pose to courts, but we can, and must, follow the practice of the Supreme Court in interpreting statutes.

The Supreme Court has confronted the issue of scrivener's errors in various cases. The decision that is most relevant to this case is *U.S. National Bank of Oregon,* 508 U.S. 439. In that case, the Supreme Court confronted a "scrivener's error" in an act passed by Congress in 1916 (the 1916 Act). *Id.* at 462. The 1916 Act generally amended section 13 of the Federal Reserve Act of 1913. *Id.* at 451, 457. But if the 1916 Act were read literally, the position of certain quotation marks would have placed a key statutory provision not in section 13 of the Federal Reserve Act but instead in section 5202 of the Revised Statutes of the United States. *Id.* at 454. The apparent relocation of this statutory provision would have had a significant consequence because another act later eliminated the relevant portion of section 5202. *Id.* at 453-54.

The Supreme Court, however, held that there was a scrivener's error in the 1916 Act and this act, therefore, did not relocate the relevant statutory provision at issue to section 5202. *Id.* at 455. The Supreme Court declined to read the 1916 Act according to the literal meaning of the enacted statutory text and its punctuation because the Court was "convinced that the placement of [certain] quotation marks in the 1916 Act was a simple scrivener's error, a mistake made by someone unfamiliar with the law's object and design." *Id.* at 462. The Court based this determination on "overwhelming evidence from the structure, language, and subject matter of the 1916 Act." *Id.* The Court also specifically considered the title of the enactment. *Id.* at 457. To correct the scrivener's error, the Court unanimously held:

> The 1916 Act should be read as if closing quotation marks do not appear at the end of the paragraph before the phrase *Section fifty-two hundred and two of the Revised Statutes of the United*

> *States* . . . and as if the opening quotation marks
> that immediately follow that phrase instead pre-
> cede it.

*Id.* at 462.

The Court expressly noted that it did not rely on the
absurdity doctrine. *Id.* at 461 n.10. The Court explained:
"The point of our analysis . . . is not that Congress could not
possibly have amended Rev. Stat. § 5202 in the middle of
the 1916 Act, but that the best reading of the Act, despite
the punctuation marks, is that Congress did something
else." *Id.* In addition, the Court expressly declined to con-
sider legislative history in making this decision. *Id.* at
462-63 n.11.

The *U.S. National Bank of Oregon* decision is signifi-
cant to our analysis of this case for three reasons. First, it
shows that the Supreme Court does not read a statute lit-
erally if the statute contains a scrivener's error. Second,
the decision identifies the Supreme Court's method for de-
termining whether a statute contains a scrivener's error.
Third, the decision shows that the Supreme Court ad-
dresses a scrivener's error in a statute by stating expressly
how the statute "should be read." *Id.* at 462. Although *U.S.
National Bank of Oregon* concerned a scrivener's error in
punctuation, the U.S. Courts of Appeals have also applied
the decision to errors that involve incorrect references to
statutory sections. *See, e.g., Appalachian Power Co. v.
E.P.A.*, 249 F.3d 1032, 1041 (D.C. Cir. 2001) (identifying a
scrivener's error and therefore upholding an administra-
tive agency's reading of a reference in a federal statute to
"§ 110(a)(2)(D)(ii) to mean § 110(a)(2)(D)(i)"); *In re Cha-
teaugay Corp.*, 89 F.3d 942, 954 (2d Cir. 1996) (identifying
a "scrivener's error resulting from inadvertence" that con-
sisted of "failing to renumber the references in § 507(d) [of
a federal statute] consistently with § 507(a)").

Contrary to our conclusion that *U.S. National Bank of
Oregon* controls our analysis of this case, the Government
argues that we should apply the absurdity doctrine de-
scribed in this Court's decision in *United States v. McPher-
son*, 81 M.J. 372 (C.A.A.F. 2021). In *McPherson*, this Court

followed the plain language of an amended statute of limitations but explained that " 'a departure from the letter of the law' may be justified to avoid an absurd result if 'the absurdity . . . is so gross as to shock the general moral or common sense.' " *McPherson*, 81 M.J. at 380 (alteration in original) (citing *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). The issue in *McPherson*, however, is distinguishable from the issue in the present dispute. The statute of limitations under consideration in *McPherson* did not involve an alleged scrivener's error, such as a typographic, clerical, or similar mistake. Instead, the alleged problem was "a substantive oversight in drafting the statute." *Id.* at 378. As this Court explained, Congress simply "may not have realized the importance of continuing to include [certain] offenses" in the amended statute of limitations. *Id.* This kind of mistake is a "drafter's error," rather than a scrivener's error. *See* Scalia & Garner, *supra,* at 235 (distinguishing scrivener's errors from drafter's errors and explaining that they are treated differently). Nowhere in *McPherson* did this Court suggest that its analysis applied to scrivener's errors.

### C. Application of Supreme Court Precedent

The same factors that persuaded the Supreme Court in *U.S. National Bank of Oregon* that the 1916 Act contained a scrivener's error persuade us that Article 69(c)(1)(A), UCMJ, contains a scrivener's error. The most significant factor in this case is the structure of Articles 65 and 69, UCMJ. *See U.S. Nat'l Bank of Or.*, 508 U.S. at 455-56 (focusing first on the structure of the act at issue). Article 69(c)(1)(A), UCMJ, rests on the premise that a previous review could have occurred under Article 65, UCMJ. And although Article 69(c)(1)(A), UCMJ, currently refers to Article 65(b), UCMJ, no review can occur under Article 65(b), UCMJ, because subsection (b) does not provide for a review of cases; instead, subsection (b) concerns the *forwarding of records* in cases that are automatically reviewed by or eligible for a direct appeal to a Court of Criminal Appeals. The only subsection in Article 65, UCMJ, that provides for a review is subsection (d).

Accordingly, the structure indicates that if Article 69(c)(1)(A), UCMJ, refers to cases reviewed under Article 65, UCMJ, it must be specifically referring to cases reviewed under Article 65(d), UCMJ, not Article 65(b), UCMJ.

Additional support of our conclusion comes from the title, language, and subject matter of the relevant statutory provisions. *See U.S. Nat'l Bank of Or.*, 508 U.S. at 455, 457-62 (finding further evidence of a scrivener's error by considering the title, language, and subject matter of the relevant statutory provisions). The title of Article 65(d), UCMJ, contains the word "Review," while the title of Article 65(b), UCMJ, does not. Similarly, Article 69(c)(1)(A), UCMJ, uses the express phrase "case reviewed under," which would be inappropriate language for referring to Article 65(b), UCMJ, which concerns the forwarding of records rather than the reviewing of cases. The subject matter covered by Article 69(c), UCMJ, concerns cases that are not eligible for review by a Court of Criminal Appeals unless they are first reviewed by the Judge Advocate General. This is also the subject of Article 65(d), UCMJ. In contrast, the subject matter of Article 65(b), UCMJ, concerns cases that a Court of Criminal Appeals must automatically review or that are at least eligible for direct appeal. Finally, we also give weight to Appellant's commonsense argument that "the typographical error here—the transposition of (d) and (b) in 10 U.S.C. § 869(c)(1)(a)—is easy to make." *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 65 (2004) (Stevens, J., with whom Breyer, J., joined, concurring) (recognizing that "a busy Congress is fully capable of enacting a scrivener's error into law").

For these reasons, we conclude that Article 69(c)(1)(A), UCMJ, contains a "simple scrivener's error, a mistake made by someone unfamiliar with the law's object and design." *U.S. Nat'l Bank of Or.*, 508 U.S. at 462. Following the lead of the Supreme Court, we need not and therefore do not consider legislative history or the doctrine of absurdity in our analysis of this case. Finally, in the same manner that the Supreme Court directed the correct reading of the

statute at issue in *U.S. National Bank of Oregon*, we direct and hold that Article 69(c)(1)(A), UCMJ, should be read as if the references to "section 865(b)" and "article . . . 65(b)" are references to "section 865(d)" and "article . . . 65(d)."[3]

Accordingly, we conclude that the Judge Advocate General properly reviewed and acted on this case under Article 69(a) and 69(c)(1)(A), UCMJ. We further conclude that the AFCCA had jurisdiction under Article 69(d), UCMJ. Because the AFCCA had jurisdiction, we have jurisdiction under Article 67(a)(3), UCMJ. We thus deny the Government's motion to dismiss.

## IV. Analysis of the Merits

In considering Appellant's petition for grant of review in this case, we granted review and briefing only with respect to the specified jurisdictional issue analyzed above. *Parino-Ramcharan*, 84 M.J. at 138. Our order granting review did not include the underlying issue for which Appellant sought review, namely: "[w]hether the military judge abused her discretion in denying the defense motion to suppress Appellant's admissions for insufficient corroboration." At oral argument, Appellant addressed this procedural posture by asserting that this Court could (1) order further briefing on the underlying issue; (2) decide whether to grant a subsequent review of the underlying issue; or (3) decide the underlying issue on the basis of the briefs themselves. We opt to decide the underlying issue on the merits based on the briefs (and other filings) before us.[4]

---

[3] We do not address highly similar references to "section 865(b)" and "article 65(b)" in Article 69(c)(2), UCMJ, because that provision is not before us in this case.

[4] We agree with Appellant that this course of action is proper. Appellant preserved the underlying issue at trial, on appeal to the AFCCA, and in his petition to this Court. And once this Court's jurisdiction has attached—as it has here based on our grant of review of the specified issue—"[t]he Court may . . . act on any issue concerning a matter of law which materially affects the rights of the parties." C.A.A.F. R. 5 (as amended through

Appellant argues that the military judge abused her discretion in denying his motion to suppress statements that he made to the police. Having reviewed the record, we agree with the AFCCA's analysis of the issue. The military judge's findings of fact regarding the circumstances surrounding Appellant's statement are not clearly erroneous. The military judge quoted the correct version of M.R.E. 304(c). The military judge also did not apply M.R.E. 304(c) to the facts in an unreasonable manner when she concluded that the circumstantial evidence met the low threshold for corroborating Appellant's statement that he had used LSD. Additionally, the military judge did not abuse her discretion in testing the evidence under M.R.E. 403.

## V. Conclusion

The motion of the United States to dismiss the petition for grant of review for lack of jurisdiction is denied. The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

Mar. 9, 2023) (addressing the scope of review); *see generally United States v. Kelly*, 14 M.J. 196, 200-01 (C.M.A. 1982) (same). In our analysis of the merits of the underlying issue, we have considered the supplement to Appellant's petition for grant of review and the record of the previous proceedings.

Chief Judge OHLSON, with whom Judge SPARKS joins, dissenting.

This case squarely presents the question of whether this Court should depart from the plain language of a statute as written by Congress. As everyone agrees (the majority opinion, this dissent, the Government, and even Appellant), the plain language of Article 69(c)-(d), Uniform Code of Military Justice (UCMJ),[1] precludes the Judge Advocate General of the Air Force (TJAG) and the United States Air Force Court of Criminal Appeals (CCA) from reviewing Appellant's Article 65(d), UCMJ,[2] case. Nonetheless, the majority disregards this plain language because, in their view, "a key provision in Article 69(c)(1)(A), UCMJ, contains a simple scrivener's error," and judicially revising the wording of the applicable provision will make operable what they deem to be "the true meaning of the statute." *United States v. Parino-Ramcharan*, __ M.J. __, __ (2) (C.A.A.F. 2024) (internal quotation marks omitted) (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993)). For the reasons provided below, I conclude that we must defer to the plain language of the statute—and to the policy choices of Congress—as reflected on the face of Article 69(c)-(d). Accordingly, I respectfully dissent.

My analysis begins with the following basic rule of statutory construction: "Unless the text of a statute is ambiguous, 'the plain language of a statute will control unless it leads to an absurd result.'" *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013) (quoting *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012)). There is no ambiguity in Article 69(c)-(d), and no party claims otherwise.

Without the presence of ambiguity in the statute, the crucial question then is whether the enforcement of the plain language of Article 69(c)-(d) would lead to an absurd result. And yet, citing to *U.S. National Bank of Oregon*, 508 U.S. at 462, the majority states that "we need not and therefore do not consider . . . the doctrine of absurdity in our analysis of this case." *Parino-Ramcharan*, __ M.J. at __

---

[1] 10 U.S.C. § 869(c), (d) (2018).

[2] 10 U.S.C. § 865(d) (2018).

(10). However, the Supreme Court more recently "reiterate[d] that 'when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (second alteration in original) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Furthermore, in reference to the scrivener's error doctrine invoked by the majority in this case, the Supreme Court recently cited with approval *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004). *Niz-Chavez v. Garland*, 593 U.S. 155, 162 n.1 (2021). In *Lamie*, the Supreme Court read the statute at issue "[w]ith a plain, *nonabsurd* meaning in view." 540 U.S. at 538 (emphasis added).

Consistent with these Supreme Court precedents, this Court has recently stated that a "fundamental principle" of statutory construction "is that the plain language . . . will control *unless it leads to an absurd result*." *United States v. Beauge*, 82 M.J. 157, 162 (C.A.A.F. 2022) (emphasis added) (internal quotation marks omitted) (quoting *King*, 71 M.J. at 52). Therefore, even in the context of the scrivener's error doctrine, the majority cannot simply sidestep the absurdity doctrine just because it proves problematic to their analysis.

As I view the absurdity doctrine, two important concepts come into play: (1) " 'a departure from the letter of the law' may be justified . . . if 'the absurdity . . . is so gross as to shock the general moral or common sense,'" *United States v. McPherson*, 81 M.J. 372, 380 (C.A.A.F. 2021) (second alteration in original) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)); and (2) a departure from the plain text of a statute "applies only in exceptional circumstances to obvious technical drafting errors," *Niz-Chavez*, 593 U.S. at 162 n.1. Absent these circumstances, "the remedy [for laws that turn out to be mischievous, absurd or otherwise objectionable] lies with the lawmaking authority, and not with the courts." *McPherson*, 81 M.J. at 374-75 (alteration in original) (internal quotation marks omitted) (quoting *Crooks*, 282 U.S. at 60); *see also Lamie*, 540 U.S. at 542 ("It is beyond our province to rescue Congress from its drafting

errors, and to provide for what we might think . . . is the preferred result." (alteration in original) (citation omitted) (internal quotation marks omitted)).

This case does not meet either of these two criteria. First, the fact that under Article 69(c)-(d) Congress did not provide for TJAG or CCA review in a limited subset of court-martial cases does not "shock the general moral or common sense." *McPherson*, 81 M.J. at 380 (citation omitted) (internal quotation marks omitted). Indeed, compare this result with that in *McPherson* where a majority of this Court held that the plain language of a law did not shock the conscience even though the text resulted in a significantly reduced statute of limitations period for certain child sex abuse offenses. *Id.* at 379-82. If the plain language of the statute in *McPherson*—which resulted in the dismissal of convictions for six specifications of repulsive indecent acts with a child—did not shock the conscience, it is difficult to fathom how the statutory denial of review of Article 65(d) cases by TJAG or the CCA does.

Second, there are no exceptional circumstances here to justify the judicial rewriting of the statute, and it is not "obvious" that we are confronted with a mere "technical drafting error[]." *Niz-Chavez*, 593 U.S. at 162 n.1. A convicted servicemember still receives adequate due process under the plain language of the applicable provision. As the Government explains, "[special and general courts-martial] with minor sentences are already reviewed by an attorney in the Office of the Judge Advocate or an attorney designated by a service regulation. Article 65(d), UCMJ." Brief for Appellee at 26, *United States v. Parino-Ramcharan*, No. 23-0245 (C.A.A.F. Jan. 3, 2024). Therefore, we should deem it reasonable for Congress to have chosen not to have TJAG conduct yet another review under Article 69(c), UCMJ. And because Congress tied the CCA's review of Article 69 to certain cases, it is not absurd in this context that Congress excluded Article 65(d) cases from appellate review.

The language in Article 69(c)-(d) is plain and "the disposition required by [its] text is not absurd." *Dodd v. United States*, 545 U.S. 353, 359 (2005) (citation omitted)

(internal quotation marks omitted). Therefore, "the sole function of [this Court] is to enforce it according to its terms." *Id.* (citation omitted) (internal quotation marks omitted). Nevertheless, the majority instead chooses to unilaterally revise the plain language of Article 69(c)(1)(A) despite the Supreme Court's admonition that "[i]t is for Congress, not this Court, to amend the statute if it believes that" correction is warranted. *Id.* at 359-60. Because I conclude that the majority is mistaken in taking this approach, I respectfully dissent and I would grant the Government's motion to dismiss Appellant's case.